AL PATRICK O'CARROLL, ADMINISTRATOR OF THE ESTATE OF WILLIAM C. O'CARROLL, Plaintiff v. TEXASGULF, INC., Defendant

No. COA98-443

(Filed 16 February 1999)

**1. Wrongful Death— worker in collapsed trench—defendant's knowledge of inherent danger—directed verdict denied**

The trial court did not err in a wrongful death action arising from the collapse of the trench in which decedent was working by denying plaintiff's motion for a directed verdict where there was no dispute that the trenching was inherently dangerous, but there was a dispute with respect to whether defendant knew or should have known that the trench was inherently dangerous.

O'CARROLL v. TEXASGULF, INC.

[132 N.C. App. 307 (1999)]

## 2. Stipulations— wrongful death—inherently dangerous trenching—submission to jury erroneous

The trial court erred in a wrongful death action arising from the collapse of a trench in which decedent was working by submitting to the jury the issue of whether decedent was engaged in an inherently dangerous activity. Because defendant admitted or stipulated in its argument before the court in opposition to plaintiff's directed verdict motion that the trenching was inherently dangerous at the time of decedent's death, it was both unnecessary and improper to submit the issue to the jury. Plaintiff was entitled to a new trial because the jury's answer to one of the issues may have been based on a finding that the trench was not inherently dangerous.

## 3. Trials— argument of counsel—opposing counsel's agenda— no gross impropriety

There was no abuse of discretion in a wrongful death action where the trial court failed to intervene ex mero motu when defense counsel argued in closing that plaintiff's attorney had an agenda of obtaining money. The argument was improper but did not rise to the level of gross impropriety.

Appeal by plaintiff from judgment filed 4 September 1997 by Judge Donald W. Stephens in Wake County Superior Court. Heard in the Court of Appeals 5 January 1999.

*Twiggs, Abrams, Strickland & Trehy, P.A., by Douglas B. Abrams, and Dill, Fountain, Hoyle & Pridgen, by William S. Hoyle, for plaintiff-appellant.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by Samuel G. Thompson and Michael W. Mitchell, for defendant-appellee.*

GREENE, Judge.

Al Patrick O'Carroll (Plaintiff), administrator of the Estate of William C. O'Carroll (Decedent), appeals from the jury's determination that Decedent's death was not caused by the negligence of Texasgulf, Inc. (Defendant).

On 18 January 1991, Decedent, who was employed by Roberts Industrial Contractors (Roberts) as a pipe welder, was crushed to death when the trench in which he was working collapsed.

## O'CARROLL v. TEXASGULF, INC.

[132 N.C. App. 307 (1999)]

Defendant obtained Roberts as an independent contractor to perform excavation and welding work at its phosphate mine near Aurora, North Carolina. Roberts had held itself out to Defendant as having expertise in excavation work, and had performed independent contract work for Defendant previously. This particular excavation contract called for the removal and replacement of a pipe under a road at Defendant's facility, and was to be completed in two stages so as not to interrupt the traffic on the road. Although Defendant did not participate in, supervise, or "police" the work performed by Roberts, the contract specifically required Roberts to comply with Defendant's Plantsite Excavation Rules, which required the walls of any trench deeper than five feet to have "suitable sloping and benching of the side walls of the excavation and/or installation of support systems such as shoring or shields." Roberts completed the first phase of the project safely, and Defendant had observed that Roberts properly sloped the walls of the first trench.

Upon commencement of the second phase on 17 January 1991, Bruce Coward (Coward), Roberts' foreman for all excavation work, discovered additional pipes and contacted Defendant to determine whether the newly discovered pipes could be removed. The next morning, two employees of Defendant, Sam Fulmer (Fulmer) and Mitchell Jackson (Jackson), arrived at the work site and confirmed that the newly discovered pipes could be removed. Fulmer and Jackson did not see evidence that anyone actually had worked in the trench, but before departing the work site on that morning, recommended that more slope be placed on the walls of the second trench because part of the earth had "sloughed off into the trench."

After Fulmer and Jackson left, Coward removed the newly discovered pipes and continued digging the trench until it reached a final depth of approximately twelve feet. Roberts then lowered the second section of pipe into the trench, and fit it into the protruding end of the first section of pipe. Decedent then entered the trench to weld the two sections of pipe together. Because Roberts failed to properly slope or otherwise install shoring or shields, the second trench collapsed shortly after Decedent entered, crushing him to death.

The federal Mine Safety & Health Administration investigated the accident, and issued a citation against Roberts for violating the Mine Safety and Health Act. Defendant did not receive a citation for the accident.

O'CARROLL v. TEXASGULF, INC.

[132 N.C. App. 307 (1999)]

On 16 December 1992, Plaintiff filed a wrongful death action against Roberts, John B. Roberts, individually, and Defendant, but settled all claims with Roberts and John B. Roberts. In his complaint against Defendant, Plaintiff alleged negligence, wanton misconduct, strict liability, and absolute liability, and sought punitive damages. On 11 February 1994, Defendant moved for summary judgment, and the trial court granted the motion on 6 April 1994. Plaintiff appealed to this Court, arguing only his negligence claim against Defendant under the doctrine of nondelegable duty. In an opinion filed 6 June 1995, this Court reversed the grant of summary judgment, holding there were genuine issues of material fact as to whether the trench was inherently dangerous and whether Defendant "knew that the trench was inherently dangerous." *O'Carroll v. Roberts Industrial Contractors*, 119 N.C. App. 140, 457 S.E.2d 752, *disc. review denied*, 341 N.C. 420, 461 S.E.2d 760 (1995). At the trial on remand, the trial court denied both Plaintiff's and Defendant's motions for directed verdict.[1] After the evidence was complete, the jury was submitted three issues. The first issue read: "Was the death of [Decedent] caused by the negligence of [Defendant]?" The jury resolved this issue in favor of Defendant, answering "No," and did not reach the second (contributory negligence) and third (damages) issues.

In his closing argument to the jury, Defendant's counsel stated: (1) "How come Texasgulf is having to defend itself in this case? Because Doug Abrams, the Plaintiff's lawyer, has an agenda. His agenda is, 'I want to get this jury thinking about the little guy versus the big guy; the estate of Billie O'Carroll versus Texasgulf.' . . . Doug Abrams' agenda is money"; (2) "What's the agenda? Doug Abrams' agenda is, 'But you told them to keep the road open. It's your fault' "; (3) "That's the agenda folks. Is that fair? How does that make you feel?"; (4) "They can't have it both ways, but that's the agenda, folks"; (5) "But that's the agenda. That's the plaintiff's lawyer's agenda. . . . He's going to want to talk to you about money. He wants you to be thinking about money. That's what he wants. That's his agenda"; and (6) "And when Mr. Abrams is up here arguing to you last, and talking about money, and talking to you about the law, think about the agenda." Plaintiff failed to object to any of these statements.

---

1. At the hearing on Plaintiff's motion for directed verdict, Defendant admitted that the trenching was inherently dangerous at the time of Decedent's death and the trial court acknowledged, "that's not an issue for the jury."

O'CARROLL v. TEXASGULF, INC.

[132 N.C. App. 307 (1999)]

In its instructions to the jury on the first issue, the trial court informed the jurors in pertinent part: (1) a landowner employing an independent contractor to perform work which the landowner knows, or should know "is inherently dangerous or will create an inherently dangerous condition on the premises is under a non-delegable duty to exercise reasonable care to keep the premises safe for all persons thereon, including employees of the independent contractor"; (2) "Our law defines inherently dangerous activity as work to be done from which serious adverse consequences will arise unless preventative measures are adopted and that which has a recognizable and substantial danger inherent in the work"; (3) "With respect to trenching this non-delegable duty of care arises when the trenching done by the independent contractor becomes inherently dangerous and the landowner knows, or . . . should have known, of the dangerous propensities of the particular trench or trenching activity in question"; and (4) "All of the evidence tends to show that at the time of [Decedent's] death that the portion of the trench in which he was working was unsafe and inherently dangerous." The trial court further explained the contentions of both Plaintiff and Defendant, and reminded the jury that Plaintiff had the burden of proving the negligence of Defendant. The trial court ended its instructions on this issue by stating:

> If you find by the greater weight of the evidence that [Decedent's] death was caused by inherently dangerous activity on [Defendant's] premises, of which [Defendant] knew, or in the exercise of reasonable care should have known, and [Defendant] failed to exercise the care of a reasonable and prudent person under those circumstances to protect occupants of the premises from harm, and that this failure was a proximate cause of [Decedent's] death, then it would be your duty to answer this first issue yes in favor of [Plaintiff].

The dispositive issues are whether: (I) the trial court properly denied Plaintiff's motion for directed verdict; (II) the jury instructions on the first issue correctly informed the jury of the law and their responsibility with respect to the inherently dangerous nature of the trenching;[2] and (III) Defendant's counsel's closing argument was so

---

2. We do not address Plaintiff's ultra-hazardous activity arguments relating to the directed verdict motion and the jury instructions because trenching is not an ultra-hazardous activity. Indeed, blasting is presently the only recognized ultra-hazardous activity in this state. *Woodson v. Rowland*, 329 N.C. 330, 350-51, 407 S.E.2d 222, 234 (1991). In any event, Plaintiff's abandonment of his strict liability claim, *O'Carroll v.*

O'CARROLL v. TEXASGULF, INC.

[132 N.C. App. 307 (1999)]

grossly improper as to require the trial court to intervene *ex mero motu.*

As a general proposition, an owner[3] has a nondelegable duty with respect to the exercise of an inherently dangerous[4] activity and the employment of an independent contractor to perform this activity does not absolve the owner of his duty to third parties. *See Woodson v. Rowland,* 329 N.C. 330, 350, 407 S.E.2d 222, 235 (1991); *see also* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 71, at 512 (5th ed. 1984) [hereinafter *Prosser on Torts*].

More precisely, an owner's liability to third parties within the scope of this nondelegable duty rule requires a showing that: (1) the activity causing the injury was, at the time of the injury, inherently dangerous, *Woodson,* 329 N.C. at 356, 407 S.E.2d at 238; (2) the owner knew, at the time of the injury, of the inherent dangerousness of the activity, *or* knew or should have known, from the circumstances preceding the injury, that the work would likely create an inherently dangerous situation,[5] *id.*; Stuart M. Speiser et al., *The American Law of Torts* § 4:28, at 699 (1983) [hereinafter *Speiser on Torts*] (question is whether the work "is likely to create a peculiar risk of harm during its progress"); *Prosser on Torts* § 71, at 512 (employer liable if "in the course of the work, injurious consequences might be expected to result 'unless means are taken to prevent them' "); and (3) the owner failed to take or ensure that reasonable precautions were taken to avoid the injury and this negligence was a proximate cause of the plaintiff's injuries, *Woodson,* 329 N.C. at 352, 407 S.E.2d at 235 (owner has "a continuing responsibility to ensure that adequate safety precautions are taken" to prevent injury); *but see Hooper v. Pizzagalli Construction Co.,* 112 N.C. App. 400, 405-06, 436 S.E.2d 145, 149

---

*Roberts Industrial Contractors,* 119 N.C. App. 140, 143, 457 S.E.2d 752, 755 (issue not argued before Court was abandoned), *disc. review denied,* 341 N.C. 420, 461 S.E.2d 760 (1995), precludes him from now reasserting the ultra-hazardous argument, *Woodson,* 329 N.C. at 350, 407 S.E.2d at 234 (ultra-hazardous activity gives rise to strict liability).

3. The use of the word "owner" in this opinion includes anyone who employs an independent contractor to perform an inherently dangerous activity.

4. "[I]t is generally understood that an activity will be characterized as [inherently dangerous] if it can be performed safely provided certain precautions are taken, but will, in the ordinary course of events, cause injury to others if these precautions are omitted." *Simmons v. N.C. Dept. of Transportation,* 128 N.C. App. 402, 406, 496 S.E.2d 790, 793 (1998).

5. Because all trenching is not inherently dangerous, it follows that the excavation of one portion of a trench may be inherently dangerous but the excavation of another portion may not be inherently dangerous.

(1993) (owner not responsible for negligence of contractor collaterally related to inherently dangerous activity), *disc. review denied*, 335 N.C. 770, 442 S.E.2d 516 (1994).

Although the determination of whether an activity is inherently dangerous is often a question of law, *Simmons v. N.C. Dept. of Transportation*, 128 N.C. App. 402, 406, 496 S.E.2d 790, 793 (1998), whether a particular *trenching* situation constitutes an inherently dangerous activity *usually* presents a question of fact and should be addressed on a case by case basis,[6] *Woodson*, 329 N.C. at 354, 407 S.E.2d at 236; *Speiser on Torts* § 4:28, at 699 (whether the work is likely to create a peculiar risk of harm is "ordinarily a question to be resolved by the trier of fact"); *Evans v. Rockingham Homes, Inc.*, 220 N.C. 253, 260-61, 17 S.E.2d 125, 129-130 (1941) (holding that digging a trench in a heavily populated area is inherently dangerous as a matter of law). The focus must be on "the particular trench being dug and the pertinent circumstances surrounding the digging." *Woodson*, 329 N.C. at 356, 407 S.E.2d at 237.

## I

[1] Plaintiff first contends he was entitled to a directed verdict because: (1) Roberts was engaged in an inherently dangerous activity; (2) Defendant knew or should have known that the activity was inherently dangerous; (3) Defendant failed to take precautions to prevent harm to Decedent; and (4) this negligence was a proximate cause of Decedent's death.

Directed verdicts for the party with the burden of proof are rarely granted. *Bank v. Burnette*, 297 N.C. 524, 536, 256 S.E.2d 388, 395 (1979). "This is so because, even though proponent succeeds in the difficult task of establishing a clear and uncontradicted prima facie case, there will ordinarily remain in issue the credibility of the evidence adduced by proponent." *Id.* Nonetheless, "where credibility is manifest as a matter of law," a directed verdict for the party with the burden of proof is proper "if the evidence so clearly establishes the fact[s] in issue that no reasonable inferences to the contrary can be drawn." *Id.*

In this case, although there was no dispute between the parties as to whether the trenching was inherently dangerous at the time of its collapse, there is a dispute with respect to whether Defendant knew

---

6. Of course, the issue of whether the trenching is inherently dangerous is always subject to resolution by summary judgment or directed verdict.

or should have known that the trench was inherently dangerous. Because we do not believe the evidence in this case clearly supports the single inference that Defendant knew or should have known of the inherent dangerousness of the trench at the time of Decedent's death, the trial court properly denied Plaintiff's motion for directed verdict.

II

[2] Plaintiff complains of the trial court's jury instructions regarding inherently dangerous activities, contending the instruction allowed the jury to find that Roberts was not engaged in an inherently dangerous activity. We agree.

Although the trial court peremptorily instructed the jury that all the evidence tended to show that the trench was inherently dangerous at the time of Decedent's death, the jury nonetheless was free to reject the credibility of the evidence on this issue, and find that the trenching was not inherently dangerous at the time of the injury. *Electro Lift v. Equipment Co.*, 270 N.C. 433, 437, 154 S.E.2d 465, 467 (1967) (a proper peremptory instruction requires the jury to answer the issue in the affirmative if they "find from the greater weight of the evidence the facts to be as all the evidence tends to show," and if the jury does not so find they must answer in the negative); *Crisp v. Insurance Co.*, 256 N.C. 408, 411, 124 S.E.2d 149, 152 (1962) (a peremptory instruction must leave it to the jury to determine the credibility of the testimony). Because Defendant admitted or stipulated, in its argument before the trial court in opposition to Plaintiff's directed verdict motion, that the trenching was inherently dangerous at the time of Decedent's death, it was both unnecessary and improper to submit this issue to the jury. *See Rickert v. Rickert*, 282 N.C. 373, 380, 193 S.E.2d 79, 83 (1972) (judicial admissions "dispense with proof and save time"); *Nationwide Homes v. Trust Co.*, 267 N.C. 528, 534, 148 S.E.2d 693, 698 (1966) (stipulated facts "are deemed established as fully as if determined by the verdict of a jury"); 73 Am. Jur. 2d *Stipulations* § 1 (1974) (stipulation is an "agreement, admission, or concession made in a judicial proceeding by the parties or their attorneys"). Because the jury's answer to the first issue may have been based on a finding that the trench was not inherently dangerous, a finding inconsistent with Defendant's admission, Plaintiff is entitled to a new trial.[7]

_____

7. Although the issue is not raised in this appeal, a claim against an owner who engages an independent contractor to perform an inherently dangerous activity is better resolved with the use of three jury issues, rather than one, as was used in this case.

III

**[3]** Plaintiff also contends Defendant's counsel's closing jury argument, wherein he accused Plaintiff's attorney of having an agenda of obtaining money, was improper and entitles Plaintiff to a new trial.

We agree with Plaintiff that Defendant's counsel's argument to the jury suggesting that Plaintiff's attorney had an agenda was improper. Plaintiff, however, did not object to this argument at trial, and our review is limited to discerning whether the statements were so grossly improper that the trial court abused its discretion in failing to intervene *ex mero motu. State v. Larrimore*, 340 N.C. 119, 158-59, 456 S.E.2d 789, 810 (1995). We do not believe the argument rises to the level of gross impropriety, and thus the trial court did not abuse its discretion by failing to intervene *ex mero motu. Compare id.* (statements that opposing counsel was casting up smoke screens, smog, and dirt because he did not want the jury to see the truth were not grossly improper) *with State v. Miller*, 271 N.C. 646, 659-60, 157 S.E.2d 335, 345-46 (1967) (statement that counsel "knew [defendant] was lying the minute he said that" was grossly improper and the trial court erred by not forbidding such argument immediately).

We have reviewed Defendant's cross-assignments of error carefully, and overrule them.

New Trial.

Judges JOHN and HUNTER concur.

---

Those three issues might read as follows: (1) Was the activity inherently dangerous?; (2) Did defendant know or should have known of the inherent dangerousness of the activity?; and (3) Was plaintiff's injury caused by the negligence of defendant?