NO. COA13-853

NORTH CAROLINA COURT OF APPEALS

Filed: 15 April 2014

TIMOTHY BLAKELEY,
    Plaintiff,

v.
THE TOWN OF TAYLORTOWN, NORTH
CAROLINA; a municipal corporation,
    Defendant.

Moore County
No. 10 CVS 250

Appeal by defendant from order entered 16 March 2012 by Judge James M. Webb in Moore County Superior Court. Heard in the Court of Appeals 5 February 2014.

> *The McGuinness Law Firm, by J. Michael McGuinness, and John W. Roebuck for plaintiff-appellee.*
>
> *Cranfill Sumner & Hartzog LLP, by Dan M. Hartzog, Jr., and Patrick H. Flanagan for defendant-appellant.*
>
> *Amicus curiae brief submitted by Narron, O'Hale and Whittington, P.A., by John P. O'Hale, for the Southern States Police Benevolent Association and the North Carolina Police Benevolent Association.*

HUNTER, Robert C., Judge.

Defendant the Town of Taylortown ("the Town" or "defendant") appeals the order denying its motion for judgment notwithstanding the verdict or, in the alternative, for amendment of the judgment and/or a new trial. After careful

review, we reverse the order denying defendant's motion to amend the verdict and remand for the trial court to reduce the jury's verdict by $5,886.97. As to all other bases for defendant's motions, we find no error.

## Background

This action arises out of the termination of plaintiff Timothy Blakeley ("plaintiff" of "Chief Blakeley") from his at-will employment as the Chief of Police for the Town. Plaintiff was hired in 2003. In 2004, a dispute arose between plaintiff and the mayor of Taylortown, Ulysses S.G. Barrett, Jr., ("Mayor Barrett") regarding the Town's use of a Cushman ATV ("the ATV") on the streets and highways in the Town. Plaintiff had observed the vehicle being operated by a Town employee on the public streets and highways. After doing some research, plaintiff determined that the ATV was not being operated in a lawful manner. Plaintiff presented his findings to the Town Council sometime in August 2004. Plaintiff claims that he was told at the August meeting by Mayor Barrett to not concern himself with the ATV. After the meeting, plaintiff obtained more information and called Mayor Barrett up directly to discuss it. Plaintiff brought the information to Mayor Barrett's home. The next day, plaintiff received a "write-up" for failing to follow the chain

of command. Specifically, plaintiff was written up for failing to first notify James Thompson, the Police Commissioner, before contacting Mayor Barrett. After this, members of the Town Council noticed an increased tension between plaintiff and Mayor Barrett.

In 2006, plaintiff was contacted by the North Carolina State Bureau of Investigation ("the SBI") concerning alleged corruption by the Taylortown Board. Eventually, as a result of this investigation, Mayor Barrett was charged with illegally benefiting from a public contract; these charges were later dropped. During the SBI investigation, sometime in August 2006, plaintiff informed the Town Council that he was involved in the investigation after he received permission from an SBI agent to do so. Plaintiff alleged that after he informed the Town Council about his involvement in the investigation, his professional relationship with Mayor Barrett and certain members of the Town Council "substantially and materially changed."

On 29 August 2006, Mayor Barrett sent plaintiff a written memo informing him that plaintiff's repeated requests during the annual budget process needed to stop. Moreover, Mayor Barrett also informed plaintiff that he had received complaints about him from several Town citizens.

During plaintiff's employment, there was a general concern about what was characterized as a drug problem in the Town. Chief Blakeley claimed that, throughout his employment, the Mayor and certain Town Council members requested confidential information about ongoing narcotics cases "constant[ly]" and "on a continuous basis." Specifically, plaintiff alleged that the Council members asked him for information about confidential informants. In November 2006, Commissioner Thompson held a meeting with Chief Blakeley and pressured him to discuss ongoing cases. In his monthly chief's report to the Board, Chief Blakeley contended that he provided them all the "legally permissible information" he could with regard to these cases. However, he claimed that he was continually pressured to provide additional confidential information, which he refused to do.

On 31 October 2006, Mayor Barrett wrote a memo criticizing plaintiff's record and claiming that he had no confidence in plaintiff's abilities. On 6 February 2007, the Town held a closed session meeting, which plaintiff attended. The Board provided plaintiff written notice of the issues they had with his performance. The Town also passed a motion that plaintiff would receive a review of his job performance within 30 days. Plaintiff claims that he never received a review. On 7 March

2007, the Board met again to consider a resolution to terminate plaintiff's employment. By a vote of 3 to 2, the Board voted to terminate plaintiff. Five days later, the Board voted again and voted 5 to 0 in favor of termination.

On 9 February 2010, plaintiff filed a complaint against the Town alleging the following causes of action: (1) common law wrongful discharge; (2) violations of North Carolina's Law of the Land clause; (3) violations of substantive and procedural due process; (4) common law misrepresentation; and (5) common law obstruction of justice. Defendant filed an answer and partial motion for judgment on the pleadings with regard to all of plaintiff's claims except the claim of wrongful discharge. On 7 June 2010, the matter came on for hearing before Judge John O. Craig, III. Judge Craig granted defendant's motion for judgment on the pleadings. On 10 June 2011, defendant moved for summary judgment as to plaintiff's remaining claim for wrongful discharge. This motion was denied in open court on 27 June 2011 by Judge James M. Webb.

The matter was tried during the 27 June 2011 term of court. After numerous motions regarding the jury instructions, the trial court instructed the jury on the common law tort of wrongful discharge of an at-will employee in violation of public

policy. With regard to what public policy plaintiff claimed he refused to violate, the trial court instructed the jury on two statutes: (1) N.C. Gen. Stat. § 14-230, which prohibits a public official from refusing to discharge his duties; and (2) N.C. Gen. Stat. § 14-226(a), which prohibits the intimidation or interference with witnesses. The jury was asked to answer four issues: (1) Was the plaintiff's refusal to participate in conduct which violated public policy a substantial factor in the defendant's decision to terminate him?; (2) Would defendant have terminated plaintiff if he had not refused to participate in that conduct?; (3) What amount of damages is plaintiff entitled to recover?; and (4) By what amount should the plaintiff's actual damages be reduced? On 7 July 2011, the jury returned a verdict and answered the issues as: yes, no, $291,000, and $191,000, respectively. That same day, plaintiff filed a motion for equitable relief of front pay in lieu of reinstatement. Defendant filed a motion in response, arguing that plaintiff was not entitled to recover front pay as an at-will employee because at-will employees are not entitled to lost wages.

On 29 September 2011, defendant filed a motion for judgment notwithstanding the verdict or in the alternative for amendment of the judgment and/or a new trial. Pursuant to Rule 59,

defendant argued that the trial court should amend the judgment because: (1) plaintiff failed to meet his burden of establishing actual damages; (2) the judgment should only include the actual wages plaintiff would have earned working for the Town up until the date of trial minus the amount of wages plaintiff actually earned during that time; and (3) in the alternative, the amount of the judgment should be amended to reflect the actual wages plus benefits plaintiff would have earned working for the Town minus the amount of wages plaintiff actually earned. Furthermore, defendant alleged that a new trial was warranted to correct an error of law, prevent a miscarriage of justice, prevent an erroneous judgment, fix a verdict that was against the weight of the evidence, fix the erroneous jury instructions, address plaintiff counsel's inflammatory and prejudicial statements during trial, and because the jury's award of damages was excessive.

On 16 March 2012, Judge Webb issued an order, among other things: (1) denying plaintiff's motion for equitable relief in the form of front pay; (2) denying defendant's Rule 59 motions; and (3) awarding plaintiff the amount of the verdict $100,000 plus $6,811.45 in costs and fees. Defendant timely appealed on 16 April 2012.

**Standard of Review**

On appeal, when defendants move for a new trial pursuant to Rule 59(a)(5), (6), and (7), a trial court's decision "may be reversed on appeal only in those exceptional cases where an abuse of discretion is clearly shown." *Greene v. Royster*, 187 N.C. App. 71, 78, 652 S.E.2d 277, 282 (2007); *see also Worthington v. Bynum*, 305 N.C. 478, 482, 290 S.E.2d 599, 602 (1982). "An appellate court should not disturb a discretionary Rule 59 order unless it is reasonably convinced by the cold record that the trial judge's ruling probably amounted to a substantial miscarriage of justice." *Anderson v. Hollifield*, 345 N.C. 480, 483, 480 S.E.2d 661, 663 (1997). However, we review the trial court's denial of a motion for a new trial pursuant to Rule 59(a)(8) *de novo*. *Auto. Grp., LLC v. A-1 Auto Charlotte, LLC*, __ N.C. App. __, __, 750 S.E.2d 562, 565 (2013).

**Arguments**

**I.  Defendant's Motion to Amend the Verdict**

First, defendant argues that the trial court erred in denying its motion to amend the verdict pursuant to Rule 59 because: (1) plaintiff failed to meet his burden of establishing the amount of actual damages he was entitled to; (2) even assuming plaintiff proved actual damages, the jury's award was

in excess of any actual damages proven at trial and the jury must have improperly considered either hypothetical future wages or emotional distress damages, neither of which constitute actual damages; and (3) the jury failed to properly adjust the damage award based on plaintiff's failure to mitigate his damages.

The only claim submitted to the jury was plaintiff's wrongful discharge claim in violation of public policy. Ordinarily, an employee without a definite term of employment is an employee at-will and may be discharged without reason. *Still v. Lance*, 279 N.C. 254, 259, 182 S.E.2d 403, 406 (1971). However, the employee-at-will rule is subject to certain exceptions. Our appellate Courts first recognized a public-policy exception to the employment-at-will doctrine in *Sides v. Duke Univ.*, 74 N.C. App. 331, 328 S.E.2d 818, *disc. rev. denied*, 314 N.C. 331, 333 S.E.2d 490 (1985), and *Coman v. Thomas Mfg. Co.*, 325 N.C. 172, 381 S.E.2d 445 (1989). "An employer wrongfully discharges an at-will employee if the termination is done for an unlawful reason or purpose that contravenes public policy." *Garner v. Rentenbach Constructors Inc.*, 350 N.C. 567, 571, 515 S.E.2d 438, 441 (1999).

At trial, the jury was instructed that the amount of damages plaintiff may be entitled to included nominal damages and actual damages. Furthermore, the trial court went on to instruct that should plaintiff prove by the greater weight of the evidence that he has suffered actual damages by reasons of the wrongful termination and the amount, those damages would include "that amount of money necessary to place the plaintiff in the same economic position in which he would have been if the wrongful termination had not occurred. Actual damages also means some actual loss, hurt, or harm[.]" The trial court went on to state that actual damages could include future losses. Defendant contends that the trial court's inclusion of future lost wages and emotional distress damages in the measure of plaintiff's actual damages constituted error.

Pursuant to Rule 59(a)(8) ("[e]rror in law occurring at the trial and objected to by the party making the motion"), defendant argues that the trial court committed an error of law in allowing plaintiff to recover damages for emotional distress and future lost wages because those types of damages at not available for a claim of wrongful discharge. Thus, the issue is whether a plaintiff asserting a cause of action for wrongful

discharge is entitled to these traditional types of tort damages.

Initially, it should be noted that "[i]n order to obtain relief under Rule 59(a)(8), a defendant must show a proper objection at trial to the alleged error of law giving rise to the Rule 59(a)(8) motion." *Davis v. Davis*, 360 N.C. 518, 522, 631 S.E.2d 114, 118 (2006). Here, even though defendant did not object to the instructions after the trial court read them to the jury, the record indicates that defendant properly objected to these jury instructions at the charge conference, and the trial court refused to alter the instructions on damages; thus, defendant properly preserved this issue for appellate review, *Wall v. Stout*, 310 N.C. 184, 189, 311 S.E.2d 571, 575 (1984), and our review is *de novo*, *Auto. Grp., LLC*, __ N.C. App. at __, 750 S.E.2d at 565.

While our Courts clearly recognize that a claim for wrongful discharge of an at-will employee constitutes a tort claim, *see Salt v. Applied Analytical, Inc.*, 104 N.C. App. 652, 662, 412 S.E.2d 97, 102-103 (1991) ("tort claim alleging wrongful discharge"); *McDonnell v. Guilford County Tradewind Airlines*, 194 N.C. App 674, 678, 670 S.E.2d 302, 306 (2009) (wrongful discharge in violation of public policy is a tort

claim), exactly what type of damages a plaintiff may be entitled to and whether it includes all traditional types of damages allowed in other tort claims has not been explicitly addressed. Defendant contends that emotional distress damages and future lost wage damages are not available for the tort of wrongful discharge of an at-will employee. In support of this argument, defendant cites two cases, *Bennett v. Eastern Rebuilders, Inc.*, 52 N.C. App. 579, 279 S.E.2d 46 (1981), and *Block v. Paul Reverse Life Ins. Co.*, 143 N.C. App. 228, 547 S.E.2d 51 (2001), for the proposition that at-will employees are not entitled to back pay or lost wage damages. However, the plaintiffs in these cases sued their former employers for breach of contract, not based on a claim of wrongful discharge. *Bennett*, 52 N.C. App. at 582, 279 S.E.2d at 49; *Block*, 143 N.C. App. at 238, 547 S.E.2d at 59. We note that, in the majority of jurisdictions that recognize the common law tort of wrongful discharge for at-will employees, plaintiffs may recover for lost wages, future lost earnings, and emotional distress. *See* 86 A.L.R.5th 397 (2001). Moreover, we find no reason why these types of tort damages would not be available to a plaintiff seeking relief for wrongful discharge in violation of public policy. Therefore, the trial court did not err by instructing the jury that it may

award plaintiff both emotional distress damages and damages for future lost wages.

In support of its argument, defendant contends that the tort of wrongful discharge is more similar to a claim of intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED") than other types of torts. Accordingly, defendant argues that because plaintiff failed to show "extreme and outrageous" conduct by defendant or "severe emotional distress," he did not meet the "stringent standard" required for emotional distress recovery. However, defendant's argument confuses the distinction between emotional distress as a type of tort damage with emotional distress constituting a specific element in a cause of action. To prove a claim of IIED, a plaintiff must show, among other things, that a defendant engaged in "extreme and outrageous conduct," which caused "severe emotional distress." *Bryant v. Thalhimer Bros., Inc.*, 113 N.C. App. 1, 7, 437 S.E.2d 519, 522 (1993). Similarly, in an NIED claim, one of the required elements is that the plaintiff suffer "severe emotional distress." *Johnson v. Ruark Obstetrics & Gynecology Associates, P.A.*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990). In contrast, emotional distress damages, sometimes referred to as "pain and

suffering" damages, is a "basis for recovery." *Iadanza v. Harper*, 169 N.C. App. 776, 780, 611 S.E.2d 217, 221 (2005). "Moreover, physical injury is only one aspect of 'pain and suffering,' which also may include emotional suffering[.]" *Id*. Thus, there is a difference when emotional distress is a required element of a claim and when it is a type of damage. Moreover, there is no requirement that a plaintiff must show severe emotional distress in order to recover pain and suffering damages. *See Iadanza*, 169 N.C. App. at 780, 611 S.E.2d at 221-22 (rejecting the argument that "the psychological component of damages for 'pain and suffering' must meet the same standard as the element of 'severe emotional distress' that is part of claims for infliction of emotional distress"). Thus, plaintiff was not required to show either "severe emotional distress" or "extreme and outrageous conduct" by defendant to be awarded emotional distress or pain and suffering damages.

Next, defendant contends that the trial court erred in not granting his motion to amend the verdict because the jury "manifestly disregarded" the jury instructions, pursuant to Rule 59(a)(5), and because the award was in excess of the evidence at trial, under Rule 59(a)(6).

Our review of this issue on appeal is abuse of discretion. *Greene*, 187 N.C. App. at 78, 652 S.E.2d at 282.

Here, it is unclear from the jury verdict how the jury reached the $291,000 award for damages. With regard to the damages for lost wages, plaintiff testified that he lost $140,462 in wages and benefits from the Town between the time of termination and trial. In calculating this number, plaintiff excluded the money he earned while he was employed as a police captain in Afghanistan. Furthermore, plaintiff claimed he lost approximately $6,626 in lost 401K benefits. Plaintiff also testified that his termination affected his future ability to obtain work in the field. Specifically, plaintiff contended that he had applied for approximately twenty-four other jobs in law enforcement in various parts of North Carolina and had four pending applications at the time of trial. Finally, plaintiff claimed that he suffered emotional distress as a result of the termination, including depression. It appears that the jury awarded plaintiff approximately $150,000 in either future lost wages, emotional distress, or a combination of both.

While defendant claims that the jury "manifestly disregarded" the instructions in awarding these types of damages, as discussed above, these types of traditional tort

damages may be awarded in a wrongful discharge action. The trial court specifically instructed the jury that it could award these types of damages; thus, there is no basis for the contention that the jury "manifestly disregarded" the instructions. Furthermore, although it is unclear exactly how the jury reached its overall figure, the jury's verdict was consistent with plaintiff's evidence, and defendant has failed to show that the award was so excessive that it could have only resulted from passion or prejudice. Accordingly, defendant is unable to meet its burden of showing that the trial court abused its discretion in denying defendant's motion to amend the verdict pursuant to Rule 59(a)(5) and (6).

Additionally, defendant contends that the jury disregarded the trial court's instructions because they did not reduce the award based on plaintiff's failure to mitigate his damages. Defendant claims that, while plaintiff applied for other law enforcement positions, he only applied for chief of police positions. By failing to apply for other types of law enforcement positions, the jury should have reduced his award accordingly.

"Under the law in North Carolina, an injured plaintiff must exercise reasonable care and diligence to avoid or lessen the

consequences of the defendant's wrong. If plaintiff fails to mitigate his damages, for any part of the loss incident to such failure, no recovery can be had." *Lloyd v. Norfolk Southern Railway Co.*, __ N.C. App. __, __, 752 S.E.2d 704, 706 (2013) (internal quotation marks omitted).

At trial, the court instructed the jury that plaintiff's damages must be reduced by the amount which he could have earned from similar employment using reasonable diligence and that "reasonable diligence requires that an employee seek and accept similar employment in the same locality." Given the testimony at trial concerning plaintiff's attempts to find new employment, defendant's argument is without merit. Plaintiff testified that he had applied for several types of positions, including a position as Chief of Police and an instructor of law enforcement at a college. In fact, plaintiff eventually took a contract position in Afghanistan as a police advisor for the Department of State. Furthermore, plaintiff listed twenty-four places he had applied to without specifying what type of position he applied for. Thus, the trial court did not abuse its discretion in denying defendant's motion to amend the verdict on this basis because the evidence clearly established that plaintiff used reasonable care and diligence when trying to find a new job.

Next, defendant argues that the trial court abused its discretion in denying his motion to amend the verdict because the jury failed to properly reduce the amount of damages awarded by the amount of money plaintiff earned after his employment with the Town ended from substitute employment and unemployment benefits. Specifically, defendant contends that the award should have been reduced by $196,886.97, not $191,000.

At trial, plaintiff's tax records for the years 2008-2010 were submitted which showed that plaintiff earned approximately $186,772.97 from his employment with DynCorp and Trigger Time. Furthermore, he received $10,114 in unemployment benefits. In total, he earned $196,886.97. Consequently, the trial court abused its discretion in denying defendant's motion to amend the verdict with regard to this issue because the evidence clearly established that plaintiff earned $196,886.97 from other employers and unemployment benefits. Accordingly, we reverse the order denying defendant's motion to amend on this basis and remand to the trial court to reduce the verdict by $5,886.97—the difference between $191,000, the amount the jury reduced its award by, and $196,886.97, the amount that the award should have been reduced by as established by the evidence.

**II. Defendant's Motion for a New Trial**

Next, defendant argues that the trial court erred in denying its motion for a new trial because: (1) the trial court erred in instructing the jury that it may include damages for emotional distress in plaintiff's award of actual damages; (2) the evidence was not sufficient to justify the verdict because plaintiff failed to meet his burden of establishing that defendant requested him to participate in conduct which violated public policy; and (3) plaintiff counsel's statements during closing argument were highly inflammatory and prejudicial.

As noted above, we review the trial court's denial of defendant's motion for a new trial on these bases for abuse of discretion. *In re Will of Buck*, 350 N.C. 621, 627, 516 S.E.2d 858, 862 (1999).

With regard to defendant's argument concerning the jury instructions, as discussed, plaintiff was entitled to seek emotional distress damages and future lost wage damages in his claim for wrongful discharge. Furthermore, our Courts have repeatedly held that actual damages include emotional distress damages. *See Ringgold v. Land*, 212 N.C. 369, 371, 193 S.E. 267, 268 (1937) ("'Actual damages' are synonymous with 'compensatory damages' and with 'general damages.' Damages for mental suffering are actual or compensatory. They are not special nor

punitive, and are given to indemnify the plaintiff for the injury suffered.") (internal citations omitted); *see also First Value Homes, Inc. v. Morse*, 86 N.C. App. 613, 617, 359 S.E.2d 42, 44 (1987). Furthermore, "[c]ompensatory damages provide recovery for, *inter alia*, mental or physical pain and suffering, lost wages and medical expenses." *Iadanza*, 169 N.C. App. at 780, 611 S.E.2d at 221. Therefore, since compensatory and actual damages are synonymous and compensatory damages include emotional distress and lost wages, defendant's argument that "actual damages" do not include emotional distress damages and damages for future lost wages is without merit.

Next, defendant contends that the evidence was insufficient to establish that defendant requested plaintiff participate in conduct which violated public policy. Specifically, defendant characterizes the evidence as too vague and unspecific to submit the issue to the jury.

To state a claim for wrongful discharge in violation of public policy, an employee has the burden of showing that his "dismissal occurred for a reason that violates public policy." *Considine v. Compass Grp. USA, Inc.*, 145 N.C. App. 314, 317, 551 S.E.2d 179, 181, *aff'd per curiam*, 354 N.C. 568, 557 S.E.2d 528 (2001). However, "something more than a mere statutory

violation is required to sustain a claim of wrongful discharge under the public-policy exception. An employer wrongfully discharges an at-will employee if the termination is done for an *unlawful reason* or *purpose* that contravenes public policy." *Garner v. Rentenbach Constructors Inc.*, 350 N.C. 567, 571, 515 S.E.2d 438, 441 (1999) (internal quotation marks omitted).

> While there is no specific list that enumerates what actions fall within this exception, wrongful discharge claims have been recognized in North Carolina where the employee was discharged (1) for refusing to violate the law at the employer's request, (2) for engaging in a legally protected activity, or (3) based on some activity by the employer contrary to law or public policy.

*Combs v. City Elec. Supply Co.*, 203 N.C. App. 75, 80, 690 S.E.2d 719, 723 (2010) (internal quotation marks omitted).

Contrary to defendant's characterization of the evidence, we conclude that the evidence was sufficient to go to the jury on the issue of whether plaintiff was discharged based on his refusal to provide confidential information on the status of ongoing drug cases. Plaintiff claims that he was discharged in retaliation for his refusal to provide members of the Town Council and Mayor Barrett with confidential information about ongoing narcotics cases. Had he chosen to provide this information, plaintiff argued that he would have violated N.C.

Gen. Stat. § 14-230. N.C. Gen. Stat. § 14-230 provides, in pertinent part that "[i]f any . . . official . . . of any city or town . . . shall willfully omit, neglect or refuse to discharge any of the duties of his office, for default whereof it is not elsewhere provided that he shall be indicted, he shall be guilty of a Class 1 misdemeanor." Initially, we note that "a chief of police as well as a policeman is an officer of the municipality which engages his services, within the meaning of the provisions of G.S. § 14-230[.]" *State v. Hord*, 264 N.C. 149, 156-57, 141 S.E.2d 241, 246 (1965). As Chief of Police, plaintiff had a duty to protect the integrity of ongoing criminal cases. In doing so, plaintiff was required to ensure that information about those cases, particularly information about informants, remain confidential. Otherwise, the safety of those informants would be jeopardized.

Plaintiff testified that he was repeatedly asked by members of the Town Council to provide confidential information on "an ongoing basis." Commissioner Lonnie Jones testified that one of the reasons plaintiff was discharged was based on his failure to keep the Board properly apprised of the status of investigations even after being repeatedly requested to do so. There is a difference between being asked on the progress of the drug cases

versus being asked to provide information about confidential informants. By asking him to provide this information, defendant was not only asking him to violate N.C. Gen. Stat. § 14-230, but it was also asking him to violate public policy which protects the safety of confidential informants. Given that plaintiff believed and testified that defendant wanted confidential information which he was legally not allowed to share and the fact that, had he done so, plaintiff would have violated the law and public policy, defendant is unable to establish that the trial court abused its discretion in denying its motion for a new trial.

Finally, defendant contends that the trial court erred in denying his motion for a new trial based on plaintiff counsel's inflammatory and prejudicial remarks during closing arguments.

Since defendant did not object at trial to these remarks, where a party fails to object during closing arguments, "our review is limited to discerning whether the statements were so grossly improper that the trial court abused its discretion in failing to intervene ex mero motu." *O'Carroll v. Texasgulf, Inc.*, 132 N.C. App. 307, 315, 511 S.E.2d 313, 319 (1999).

In its brief, defendant cites several statements made by plaintiff counsel that it characterized as grossly improper. We

agree with defendant that those statements made by plaintiff's counsel that characterized the Town and at-will employment in an unflattering way and the highly inflammatory remarks regarding Mayor Barrett, among others, were improper. Upon review, however, these statements were not so prejudicial as to entitle defendant to a new trial. Defendant did not object to this argument at trial, and our review is limited to discerning whether the statements were so grossly improper that the trial court abused its discretion in failing to intervene *ex mero motu*. *Id*. We do not believe the argument rises to the level of gross impropriety, and, thus, the trial court did not abuse its discretion by failing to intervene.

**Conclusion**

With regard to defendant's motion to amend the verdict based on the jury's failure to properly offset the amount of damages by the amount of money plaintiff earned in other jobs and in unemployment benefits, we remand for the trial court to reduce the judgment by $5,886.97. As to all other bases for the denial of defendant's motion to amend the verdict and motion for a new trial, we find no error.

REVERSED AND REMANDED IN PART; NO ERROR IN PART.

Judges GEER and McCULLOUGH concur.