An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1296
NORTH CAROLINA COURT OF APPEALS

Filed: 3 June 2014


DEBORAH LYNN JACKSON,
Administratrix of the Estate of
JOEL EDWARD TRIPP

    vs.                       Columbus County
                                    No. 11 CVS 1360

TOWN OF LAKE WACCAMAW

    vs.

ES & J ENTERPRISES, INC.


Appeal by Plaintiff from order entered 26 July 2013 by Judge D. Jack Hooks, Jr., in Columbus County Superior Court. Heard in the Court of Appeals 5 March 2014.


> *Brent Adams & Associates, by Brenton D. Adams, for Plaintiff.*
>
> *Crossley, McIntosh, Collier, Hanley & Edes, PLLC, by Brian E. Edes and Jarrett W. McGowan, for Defendant and Third-Party Plaintiff Town of Lake Waccamaw.*
>
> *McAngus, Goudelock & Courie, PLLC, by John T. Jeffries and Jeffrey B. Kuykendal, for Third-Party Defendant ES&J Enterprises, Inc.*


DILLON, Judge.

Plaintiff Deborah Lynn Jackson, Administratrix of the Estate of Joel Edward Tripp, appeals from the trial court's order denying her motion for summary judgment and granting summary judgment in favor of Defendant Town of Lake Waccamaw (the Town). For the following reasons, we affirm.

## I. Factual & Procedural Background

On the morning of 2 August 2007, Third-Party Defendant ES&J Enterprises, Inc. (ES&J) was engaged in trenching and pipe-laying operations as an independent contractor, hired by the Town. Joel E. Tripp (Decedent) was employed by ES&J as a member of ES&J's "Utility Crew," which was responsible for "install[ing] water, sewer and storm drain pipes of various sizes."

At approximately 9:00 a.m., Decedent was situated at the bottom of a trench – which was approximately twelve feet deep and ten feet wide – taking measurements to determine the extent to which additional soil needed to be excavated to facilitate installation of an already partially-installed 42-inch cement pipe. Decedent determined that one additional "pass was needed with the bucket of the trackhoe" to render the trench sufficiently deep, and he signaled the trackhoe operator to lower the bucket accordingly. It was intended that Decedent

remain within the excavation area as the bucket was lowered and that he climb inside the already-installed portion of the cement pipe for protection. Although the ES&J safety manual explicitly prohibited its workers from being "in an excavation while equipment is working or parked next to the edge[,]" ES&J had developed this practice of taking cover within the already-installed pipe as its standard operating procedure, as the ES&J supervisors believed – and so testified – that the cement pipe would sufficiently shield the ES&J workers from the bucket of the trackhoe.

The trackhoe operator observed Decedent's signal and waited for Decedent to climb into the pipe before lowering the bucket into the trench. Another worker, who was assisting Decedent as his "tail man" at the time, also observed Decedent enter the pipe before the bucket was lowered into the trench. The trackhoe operator lost sight of both Decedent and the trench as the bucket was lowered into the trench, as his view was obscured by the bucket itself. The bucket struck Decedent, pinning his body against the pipe that was intended to serve as his protective shelter. Decedent sustained internal injuries as a result of the accident, and died several hours later.

On 6 October 2011, Plaintiff filed the present action against the Town, alleging negligence and seeking both compensatory and punitive damages.[1] On 23 January 2013, the Town filed its amended answer denying Plaintiff's allegations of negligence and raising numerous defenses against Plaintiff's claims, including contributory negligence. The Town also asserted a third-party complaint against ES&J, seeking indemnification and/or contribution to the extent that the Town was held liable in connection with Decedent's death.

On 3 July 2013, the Town moved for summary judgment against Plaintiff on her claims, contending that "Plaintiff ha[d] failed to meet essential elements of her claim in establishing actual negligence/wrongful conduct against the Town"; that "Plaintiff's claims for punitive damages [were] barred by law"; and that "Plaintiff's claims [were] barred by [Decedent's] own contributory negligence." On 11 July 2013, Plaintiff filed a reply and countering motion for partial summary judgment, contending that the Town had, as a matter of law, "failed to

---

[1] Plaintiff previously filed a wrongful death action against the Town, ES&J, and several other named defendants in 2009. In this previous action, Plaintiff voluntarily dismissed without prejudice her claims against the Town, and the trial court ultimately granted ES&J's motion for summary judgment, a decision that was upheld by this Court in *Jackson v. ES&J Enterprises, Inc.*, No. COA11-225 (Feb. 7, 2012) (unpublished).

exercise due care for the safety of the employees of [ES&J], including [Decedent]"; that there existed genuine issues of material fact concerning whether "the activity conducted by [ES&J] was inherently dangerous and whether the [Town] failed to exercise due care to ensure that the work place was safe for the employees of [ES&J] and for the public in general"; that "all the evidence show[ed] as a matter of law that the activities engaged in by [Decedent] were inherently dangerous and that the Town [] did absolutely nothing to ensure a safe work place"; and that Decedent "was killed as a result of the failure of [the Town] to exercise due care and [was] therefore liable to [Plaintiff] for the death of [Decedent] in an amount to be determined . . . by the jury."

On 15 July 2013, these matters came on for hearing in Columbus County Superior Court. By order entered 26 July 2013, the trial court granted summary judgment in favor of the Town, concluding that there existed no genuine issue of material fact "as to: (1) that [the Town] knew or should have known that excavation was an inherently dangerous activity; and (2) Decedent's contributory negligence was a proximate cause of his own injury." From this order, Plaintiff appeals.

## II. Analysis

Plaintiff contends that the trial court erred in denying her motion for summary judgment and in granting summary judgment in favor of the Town. We disagree.

A motion for summary judgment is appropriately granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2011). We review the trial court's summary judgment order *de novo*. *Foster v. Crandell*, 181 N.C. App. 152, 164, 638 S.E.2d 526, 535 (2007).

Here, there is no dispute that the Town hired ES&J to perform trenching and pipe-laying operations as an independent contractor. The general rule in North Carolina is that "[o]ne who employs an independent contractor is not liable for the independent contractor's negligence[.]" *Kinsey v. Spann*, 139 N.C. App. 370, 374, 533 S.E.2d 487, 491 (2000) (quoting *Woodson v. Rowland*, 329 N.C. 330, 350, 407 S.E.2d 222, 234 (1991)). There is an exception to this rule, however, where the work to be performed by the independent contractor is "inherently dangerous":

> One who employs an independent contractor to perform an inherently dangerous activity may

not delegate to the independent contractor the duty to provide for the safety of others:

> The liability of the employer rests upon the ground that mischievious [sic] consequences will arise from the work to be done unless precautionary measures are adopted, and the duty to see that these precautionary measures are adopted rests upon the employer, and he cannot escape liability by entrusting this duty to another as an 'independent contractor' to perform.
>
> The party that employs the independent contractor has a continuing responsibility to ensure that adequate safety precautions are taken.

*Woodson*, 329 N.C. at 352, 407 S.E.2d at 235 (citations omitted).

Moreover,

> an owner's liability to third parties within the scope of this nondelegable duty rule requires a showing that: (1) the activity causing the injury was, at the time of the injury, inherently dangerous, (2) the owner knew, at the time of the injury, of the inherent dangerousness of the activity, or knew or should have known, from the circumstances preceding the injury, that the work would likely create an inherently dangerous situation, and (3) the owner failed to take or ensure that reasonable precautions were taken to avoid the injury and this negligence was a proximate cause of the plaintiff's injuries,

*O'Carroll v. Texasgulf, Inc.*, 132 N.C. App. 307, 312, 511 S.E.2d

313, 317-18 (1999) (citations omitted).

Plaintiff contends that the Town should be held liable based upon its negligent supervision of ES&J's inherently dangerous pipe-laying activities, which, in turn, resulted in Decedent's death. At the very least, Plaintiff asserts, there is a genuine issue of material fact concerning whether the Town exercised due care in its supervision of ES&J's activities.

This issue concerning the danger inherent in ES&J's activities in question was addressed – at least tangentially – by this Court in *Jackson v. ES&J Enterprises, Inc.*, No. COA11-225 (Feb. 7, 2012) (unpublished). There, Plaintiff sought to recover against ES&J outside of the Workers' Compensation Act, under the exceptions carved out by our Supreme Court in *Woodson* and *Pleasant v. Johnson*, 312 N.C. 710, 325 S.E.2d 244 (1985). *Id.* at *1. In reviewing the trial court's decision to grant summary judgment in ES&J's favor, we held, *inter alia*, that Plaintiff had presented insufficient evidence that ES&J knew that its practice of requiring workers to take cover within the pipe during a dig was substantially certain to result in serious injury or death. *Id.* at *4-7. In so holding, we stated the following:

> Plaintiff, however, asserts that the OSHA inspector assigned to investigate the fatality, Paul Vogel, found that the practice was inherently dangerous and could

cause serious injury or death. However, the OSHA report repeatedly indicates that the danger was to employees "within the confines of the trench box"—it does not state that the same danger existed if the employee went into the already-installed pipe past the end of the trench box, where the pipe was covered with dirt. In fact, Mr. Vogel testified that if an employee followed ES & J's practice, the employee would be protected in the concrete pipe with overhead and lateral protection. According to Mr. Vogel, had Mr. Tripp been in the pipe consistent with standard ES & J operating procedure, he would not have been hurt.

Additionally, the OSHA report states in the "Employer Knowledge" section that ES & J "believed this [practice] to be safe." **_Plaintiff has, in fact, presented no evidence that suggested that the supervisors or anyone else at defendant ES & J knew that going into the pipe was dangerous at all_**—to say nothing of being substantially certain to result in serious injury or death.

*Id.* at *5 (emphasis added).

The issue now before us differs from that presented in Plaintiff's previous appeal, in that here we are not concerned with whether *ES&J knew* that the practice in question was substantially certain to result in serious injury or death; rather, the question presented is whether ES&J's "standard operating procedure" in question qualifies as an "inherently dangerous" activity. The second prong of the "inherently dangerous" test, however, queries whether "the owner knew, at

the time of the injury, of the inherent dangerousness of the activity, or knew or should have known, from the circumstances preceding the injury, that the work would likely create an inherently dangerous situation." *O'Carroll*, 132 N.C. App. at 312, 511 S.E.2d at 317-18. In other words, whereas Plaintiff's previous appeal concerned ES&J's knowledge concerning the danger inherent in its activities, the present appeals concerns *the Town's* knowledge of the danger associated with those same activities. This Court thoroughly considered in Plaintiff's previous appeal whether ES&J knew of the hazards associated with its workers taking cover within the already-installed pipe during its trenching operations, and we answered that question in the negative. Here, on virtually the same evidence, we take the logical view that if ES&J lacked knowledge of the danger inherent in its operating procedure – and indeed, this Court determined that there was no evidence demonstrating otherwise – then we must conclude that the Town – a party further removed from the activities in question – likewise lacked such knowledge. The Town hired ES&J to perform the pipe laying portion of its project, relying on ES&J's expertise in the area and its ability to develop its own internal policies to safeguard its workers. Absent any evidence to the contrary –

and we have found none – we cannot say that the Town *knew* of a danger associated with ES&J's activities of which ES&J was unaware.

Alternatively, assuming *arguendo* that ES&J's activities were inherently dangerous, and further assuming that the Town was aware of such danger, the uncontroverted evidence indicates that Decedent's own conduct contributed to his death. The only evidence before the trial court pertinent to the issue of Decedent's contributory negligence was that ES&J had developed a policy through practice that required its pipe layers to enter the already-installed pipe to protect themselves from the bucket of the trackhoe; that no ES&J worker had previously been injured as a result of this policy; that the trackhoe operator and Decedent's "tail man" each testified that they had observed Decedent signal the trackhoe operator before entering the pipe; and that, as the OSHA inspector determined through his investigation of the incident, Decedent would have not been hurt had he been in the pipe consistent with ES&J procedure. Plaintiff has not introduced any evidence that would create a genuine issue of material fact on this issue.

Accordingly, in light of the foregoing, we affirm the trial court's order granting summary judgment in the Town's favor.

AFFIRMED.

Judges BRYANT and STEPHENS concur.

Report per Rule 30(e).