Hopkins v. MWR Mgmt. Co., 2017 NCBC 90.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

BRANDON HOPKINS,

Plaintiff,

v.

MWR MANAGEMENT COMPANY d/b/a
MICHAEL WALTRIP RACING and TY
NORRIS,

Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
15 CVS 697

**ORDER AND OPINION ON
DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT AS TO
DAMAGES AND DEFENDANTS'
MOTIONS *IN LIMINE***

1.     **THIS MATTER** is before the Court upon (i) Defendants MWR Management Company d/b/a Michael Waltrip Racing ("MWR") and Ty Norris's ("Norris," collectively, "Defendants") Motion for Summary Judgment as to Plaintiff Brandon Hopkins's ("Plaintiff" or "Hopkins") alleged damages ("Summary Judgment Motion on Damages") and (ii) Defendants' Motion *in Limine* to Exclude Introduction of Certain of Plaintiff's Alleged Damages ("Damages Motion *in Limine*") and Defendants' Motion *in Limine* to Exclude Plaintiff's Expert Witness and Reports (the "Expert Motion *in Limine*," collectively the "Motions *in Limine*") in the above-captioned case.  Having considered the Summary Judgment Motion on Damages and the Motions *in Limine* (collectively the "Motions"), the briefs and appropriate evidence in support of and in opposition to each of the Motions, and the arguments of

counsel at the hearing on Defendants' Motion for Summary Judgment on November 3, 2016 and at a hearing on the Motions *in Limine* on September 6, 2017, the Court hereby **GRANTS in part and DENIES in part** each of the Motions as set forth below.

> *Van Kampen Law, PC, by Joshua R. Van Kampen, Sean F. Herrmann, and Kevin P. Murphy, for Plaintiff Brandon Hopkins.*

> *James, McElroy & Diehl, P.A., by Jon P. Carroll and Adam L. Ross, for Defendants MWR Management Company and Ty Norris.*

Bledsoe, Judge.

## I.

### PROCEDURAL AND FACTUAL BACKGROUND

2. This case is currently scheduled for trial commencing on December 4, 2017.

3. The factual and procedural background of this case is recited in detail in *Hopkins v. MWR Mgmt. Co.,* 2017 NCBC LEXIS 47 (N.C. Super. Ct. May 31, 2017) (granting in part and denying in part Plaintiff's and Defendants' Motions for Summary Judgment). The alleged facts and procedural history pertinent to the resolution of the present Motions are set forth below.

4. On November 10, 2015, Hopkins filed his Second Amended Complaint against Defendants alleging, among other things, claims for defamation, tortious interference with contract, wrongful discharge, and statutory violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112 *et seq.*, Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and North Carolina Retaliatory

Discrimination Act ("REDA"), N.C. Gen. Stat. § 95-240 *et seq.* Defendants answered by denying all liability and asserting various affirmative defenses and counterclaims.

5. After the completion of discovery, Plaintiff and Defendants separately moved for summary judgment on September 1, 2016, each side seeking the dismissal of all claims brought by the other (the "Cross-Motions"). In addition, Defendants moved the Court in their Motion for Summary Judgment to limit Plaintiff's recoverable damages, if any, should the Court permit any of Plaintiff's claims to survive Rule 56 dismissal. Defendants specifically contended that Plaintiff had failed to establish his right to recover damages for back pay, front pay, reputational harm, emotional distress, and consequential damages as a matter of North Carolina law. The Court held a hearing on Defendants' Motion for Summary Judgment on November 3, 2016.

6. On May 31, 2017, the Court ruled on the Cross-Motions, granting in part and denying in part each summary judgment motion. *See generally, Hopkins*, 2017 NCBC LEXIS 47. Because the parties had engaged in limited briefing and argument concerning the sustainability of Plaintiff's damages claims, however, the Court deferred its summary judgment ruling on most of Plaintiff's damages claims until the motion *in limine* stage of this litigation to "permit additional briefing and argument." *Id.* at *56. The Court did so in anticipation that Defendants' forecasted Damages Motion *in Limine* would raise many of the same legal arguments concerning Plaintiff's right to recover damages as were before the Court on summary judgment.

*Id.* at \*55–56. The Court did not invite further evidentiary submissions on the Cross-Motions.

7. On August 1, 2017, Defendants filed the Damages Motion *in Limine.* The motion largely reprises the legal arguments Defendants advanced on summary judgment, contending that most of Plaintiff's claimed damages are not legally recoverable in this case as a matter of law. On August 4, 2017, Defendants filed the Expert Motion *in Limine,* which seeks to exclude Plaintiff's expert witness, Dr. Gary Albrecht, from testifying or presenting his report at trial.

8. Hopkins contends that he is entitled to offer evidence of, and recover, the following damages based on his remaining claims in this action:

- Back pay from Plaintiff's termination date to trial, and front pay from trial forward;
- Lost earnings capacity;
- Emotional distress;
- Reputational harm;
- Consequential damages;
- Liquidated damages (for Defendants' alleged FMLA violations);
- Treble damages (for Defendants' alleged REDA violations)
- Punitive damages;
- Attorney's fees; and
- Pre-Judgment Interest.

(Pl.'s Mem. Opp'n Damages Mot. Lim. 4, ECF No. 128.)

9. To help calculate some of these damages, Plaintiff's counsel retained Dr. Albrecht, who holds a Ph.D. in Economics from Indiana University. (Pl.'s Mem. Opp'n Expert Mot. Lim. Ex. D, Dr. Gary Albrecht Vitae, ECF No. 129.) Dr. Albrecht prepared a damages report on December 16, 2015, which he updated on three separate occasions, the last on August 8, 2017. (Pl.'s Mem. Opp'n Expert Mot. Lim.

Exs. A, C, hereinafter "Albrecht Report [date].") Dr. Albrecht's reports purport to calculate Plaintiff's "diminished earnings" over a seventeen-year period, from age twenty-eight to age forty-five, as a result of his termination. (Albrecht Report 8/8/2017, at 2.)

10. The Court held a hearing on Defendants' Motions *in Limine* on September 6, 2017, at which all parties were represented by counsel.

11. The Motions are now ripe for resolution.

II.

LEGAL STANDARD

A. Summary Judgment

12. Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." N.C. R. Civ. P. 56(c). An issue is genuine if it is "supported by substantial evidence," and "an issue is material if the facts alleged would constitute a legal defense, or would affect the result of the action, or if its resolution would prevent the party against whom it is resolved from prevailing in the action." *DeWitt v. Eveready Battery Co.*, 355 N.C. 672, 681, 565 S.E.2d 140, 146 (2002).

13. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and means more than a scintilla or a permissible inference." *Id.* (Citations omitted). The Court views the evidence

presented "in the light most favorable to the nonmoving party." *Day v. Rasmussen*, 177 N.C. App. 759, 762, 629 S.E.2d 912, 914 (2006). However, affidavits must "set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify." N.C. R. Civ. P. 56(e).

14. The moving party "bears the initial burden of demonstrating the absence of a genuine issue of material fact." *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 579, 573 S.E.2d 118, 124 (2002). "[O]nce the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a prima facie case at trial." *Gaunt v. Pittaway*, 139 N.C. App. 778, 784–85, 534 S.E.2d 660, 664 (2000). The nonmoving party, in his response, "must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." N.C.R. Civ. P. 56(e).

15. For purposes of resolving Defendants' Summary Judgment Motion on Damages, the Court considers only the evidence of record before the Court on the Cross-Motions and, in particular, does not consider later filed evidence tendered by either party in connection with the Motions *in Limine*. The Court deferred its summary judgment ruling on damages solely to permit the Court to have the benefit of the parties' further briefing and oral argument concerning Plaintiff's right to recover the challenged damages as a matter of North Carolina law. The Court did

not seek or permit the presentation of additional evidence in support of or in opposition to the Cross-Motions.

B. Motions *in Limine*

16. "A motion *in limine* seeks pretrial determination of the admissibility of evidence proposed to be introduced at trial[.]" *Hamilton v. Thomasville Med. Assocs.*, 187 N.C. App. 789, 792, 654 S.E.2d 708, 710 (2007). The Court has "wide discretion in making this advance ruling," and that ruling is "subject to modification during the course of the trial." *Id.*

17. Except as noted below, for purposes of resolving the Motions *in Limine*, the Court considers the evidence advanced and forecast by each party in connection with those Motions, which includes, but is not limited to, evidence relied upon by the parties in connection with the Cross-Motions. The Court will strike and not consider, however, the affidavits of Ashley Storm and Joel Delph, each of which was tendered by Plaintiff in opposition to Defendants' Damages Motion *in Limine*. (*See* Pl.'s Mem. Opp'n Damages Mot. Lim. Exs. H, I.) Despite their apparent knowledge of facts relevant to this dispute, and despite Defendants' proper discovery requests asking Plaintiff to identify all such witnesses, Plaintiff failed to disclose either Storm or Delph in any pleading, discovery response, report, or other submission or filing in this case prior to offering their affidavits. The Court thus concludes, in the exercise of its discretion, that it would be unfair and unduly prejudicial to permit affidavit testimony from these undisclosed witnesses at this late date in these proceedings. The Court will not strike on similar grounds, however, two other affidavits challenged

by Defendants, those of Greg Miller and Jahn-Marie Hassel, each of whom Plaintiff had previously disclosed as potential witnesses with knowledge of relevant facts in this case. (*See* Pl.'s Mem. Opp'n Damages Mot. Lim. Exs. B, G.)

## III.

## ANALYSIS

### A. Damages

#### a. Back Pay

18. Back pay restores "a plaintiff in an employment discrimination case 'to the position she would have occupied but for the discrimination.'" *Rhoads v. F.D.I.C.*, 956 F. Supp. 1239, 1260 (D. Md. 1997) (quoting *Patterson v. Greenwood School Dist. 50,* 696 F.2d 293, 295 (4th Cir.1982)), *aff'd in part, rev'd in part*, 257 F.3d 373 (4th Cir. 2001). It follows that back pay liability cannot exist where a plaintiff's position ceases to exist, *id.*, so long as the employer "establish[es] by a preponderance of the evidence that the plaintiff would not have been retained in some other capacity." *Holland v. Gee*, 677 F.3d 1047, 1066, n.9 (11th Cir. 2012). *Compare Rhoads*, 956 F. Supp. at 1260–61 (rejecting back pay where seller-employer established that employee would not have been retained by acquiring company) *with Gaddy v. Abex Corp.*, 884 F.2d 312, 319 (4th Cir. 1989) (permitting back pay where new employer retained seller-employer's employees in plaintiff's former department in the same positions).

i. Summary Judgment.

19. Defendants argued on their Motion for Summary Judgment that Hopkins could not recover back pay under the rule set forth in *McKennon v. Nashville Banner Publ. Co.*, 513 U.S. 352, 362 (1995). Specifically, Defendants contended that MWR would have terminated Hopkins for his alleged misappropriation of the 035 Gun and sockets, which Defendants assert is the reason for Hopkins's discharge, and for allegedly accessing and emailing to himself MWR's trade secrets on the day prior to his discharge, which Defendants contend they discovered on the day after Hopkins's discharge. (Defs.' Br. Supp. Mot. Summ. J. 39, ECF No. 80.) The Court denied summary judgment on this specific argument, concluding that "Defendants' position. . . depends on a determination that [Hopkins's] conduct was so severe that MWR would have fired Hopkins on those grounds alone, which implicates the factual disputes at the center of this case." *Hopkins,* 2017 NCBC LEXIS 47, at *56.

20. Defendants also argued, in the alternative, that back pay damages should be capped at $210,624 because MWR ceased racing operations in December 2015. (Defs.' Br. Supp. Mot. Summ. J. 39–40.) The Court deferred its ruling on this aspect of Defendants' Motion for Summary Judgment until the motion *in limine* phase of this case. The Court now addresses Defendants' contention that the period for Plaintiff's back pay damages cannot extend after the date on which MRW ceased racing operations as a matter of law.

21. It is undisputed that MWR ceased racing operations in December 2015 and that Plaintiff was employed in MWR's racing operations at all times during his

employment. (Pl.'s Mem. Opp'n Damages Mot. Lim. 40; Hopkins Dep. 742–43.) At issue is whether Plaintiff would have still been employed after MWR ceased racing operations such that back pay could extend from the date of termination through trial.

22. Defendants contend, with supporting evidence, that because Plaintiff was employed as a pit crew member, he would have necessarily been terminated with all other pit crew members when MWR ceased racing operations in December 2015. (Defs.' Br. Supp. Mot. Summ. J. 39.) As a result, Defendants argue that Plaintiff's back pay damages cannot exceed $210,624, the amount of compensation Plaintiff's expert has calculated that Plaintiff would have earned at MWR from his termination on August 5, 2014 until MWR's closure on December 15, 2015. *See, e.g., Tyler v. Union Oil Co.*, 304 F.3d 379, 401-02 (5th Cir. 2002) (upholding district court's determination that "back pay should only be awarded through the May 25, 2000 cessation of [the employer's] operation"); *EEOC v. Recession Proof United States LLC*, 2013 U.S. Dist. LEXIS 171524, at *46 (D. Ariz. Aug. 19, 2013) ("[W]hen a defendant employer's business is sold, closed or terminated, the period of back pay ends at the time the business ceased to operate."); *Rhoads*, 956 F. Supp. at 1260–61 ("Certainly, if the plaintiff's job ceases to exist so must any back pay liability."); *Helbling v. Unclaimed Salvage & Freight Co.*, 489 F. Supp. 956, 963 (E.D. Pa. 1980) (holding that back pay award was appropriate only for period from termination to the closing of the store where plaintiff worked, i.e. "the period it can be assumed she would have held the job to which she was entitled").

23. The Court concludes that Defendants have satisfied their burden to show the absence of a material fact as to Plaintiff's right to back pay after December 15, 2015, thus shifting the burden to Plaintiff "to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a prima facie case at trial." *Gaunt*, 139 N.C. App. at 784–85, 534 S.E.2d at 664. Plaintiff, however, failed to forecast any specific facts showing a genuine issue for trial as to post-December 2015 back pay. Instead, Plaintiff chose to address Defendants' argument in his opposition brief by simply asserting that MWR's closure "goes only to back pay" and that the other damages claimed by Plaintiff "are wholly unaffected by MWR's cessation of operations." (Pl.'s Mem. Opp'n Mot. Summ. J. 40, ECF No. 99.)

24. As such, Plaintiff has not met its burden, and the Court concludes that Defendants are entitled to summary judgment limiting Plaintiff's claim for back pay damages to the period between Plaintiff's termination on August 5, 2014 and MWR's cessation of racing operations in December 2015. *See Carter v. Clements Walker PLLC,* 2014 NCBC LEXIS 12, at *13 (N.C. Super. Ct. Jan. 10, 2014) (granting summary judgment for defendants where plaintiff failed to produce evidence of damages); *see also Cyprus Group, LLC v. Twiss*, 2008 N.C. App. LEXIS 845, at *9 (N.C. App. May 6, 2008) (upholding summary judgment where nonmoving party simply asserted the existence of a genuine issue of material fact without offering evidence).

25. Although the Court does not consider Plaintiff's evidence offered in opposition to Defendants' Damages Motion *in Limine* in deciding Defendants' motion for summary judgment on this issue, consideration of the Damages Motion *in Limine* evidence before the Court leads to the same result. Plaintiff's Damages Motion *in Limine* evidence purports to show that MWR retained eight employees after MWR ceased racing operations. (Pl.'s Mem. Opp'n Damages Mot. Lim. Exs. L, M.) Based on that evidence, and based on Plaintiff's contention (without citation to any evidence) that "Plaintiff's job entailed more than just changing tires on race day," (Pl.'s Mem. Opp'n Damages Mot. Lim. 11), Plaintiff contends that the burden is shifted to Defendants to prove that Plaintiff would have been terminated when MWR ceased racing operations.

26. In response, Defendants point to Hopkins's sworn deposition testimony in which he twice admitted that he would not have been employed at MWR after December 30, 2015, the date when MWR terminated the employment of all of its pit crew members after ceasing racing operations. (Hopkins Dep. 742–43.) Defendants further proffer, and Plaintiff does not deny, that the eight employees MWR retained after it ceased racing operations were management-level employees and that MWR never employed Hopkins at any time as a management-level employee. (Defs.' Reply Br. Damages Mot. Lim. 4, ECF No. 130.)

27. As a result, the Court concludes that even if it were to consider the evidence offered by Plaintiff in connection with Defendants' Damages Motion *in Limine* in considering Defendants' Motion for Summary Judgment, the Court would continue

to necessarily conclude that Plaintiff has failed to show a genuine issue of material fact concerning his right to back pay after December 2015 in light of the undisputed evidence of record. Thus, the Court concludes that Defendants are entitled to summary judgment limiting Plaintiff's claim for back pay damages. Nevertheless, because it appears that the undisputed Damages Motion *in Limine* evidence reveals that MWR terminated its pit crew members on December 30, 2015, after ceasing racing operations on December 15, 2015, the Court will consider the Damages Motion *in Limine* evidence on summary judgment for the limited purpose of adjusting the end date for the period of back pay damages to the date MWR's pit crew members were terminated rather than the date MWR ceased racing operations. Accordingly, Defendants are entitled to summary judgment limiting Plaintiff's claim for back pay damages to the period between Plaintiff's termination on August 5, 2014 and MWR's termination of its pit crew members on December 30, 2015.

ii. Damages Motion *in Limine*.

28. Consistent with the Court's resolution of Defendants' Motion for Summary Judgment concerning back pay, the Court will permit evidence and argument concerning Plaintiff's alleged back pay damages only for the period extending from Plaintiff's termination on August 5, 2014 until MWR's termination of its pit crew members on December 30, 2015.

b. Front Pay

i. Summary Judgment.

29. As with back pay, Defendants contended on their Motion for Summary Judgment that Plaintiff cannot recover front pay as a matter of law because MWR ceased operations in December 2015, citing *Sandlin v. Corp. Interiors, Inc.*, 972 F.2d 1212, 1215 (10th Cir. 1992) ("[R]einstatement is not possible and front pay is inappropriate if a defendant company has ceased doing business."). (Defs.' Br. Supp. Mot. Summ. J. 39–40.) The Court ruled, however, that "an award of front pay appears to be possible under Fourth Circuit precedent even where the employer is no longer in business." *Hopkins*, 2017 NCBC LEXIS 47, at *56 (citing *Jones v. SouthPeak Interactive Corp.*, 986 F.Supp.2d 680, 685 (E.D. Va. 2013) (finding front pay in such circumstances a "conceptual possibility")). As a result, while an award of front pay to Plaintiff in light of MWR's cessation of racing operations appears unlikely under prevailing case law, the Court is not prepared to dismiss Plaintiff's claim on summary judgment as a matter of law on this record.

ii. Damages Motion *in Limine*

30. In addition to contending that MWR's closure disqualifies Plaintiff from front pay, Defendants argue that front pay is an equitable remedy not proper for jury consideration. (Defs.' Mem. Supp. Damages Mot. Lim. 7, ECF No. 121.) Plaintiff agrees, (Pl.'s Mem. Opp'n Damages Mot. Lim. 11–12), as does the Court. *See, e.g., Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 307 (4th Cir. 1998) (front pay is "an equitable remedy best determined by the [trial] court rather than the jury"); *Duke v.*

*Uniroyal Inc.,* 928 F.2d 1413, 1424–25 (4th Cir. 1991) (front pay "award and amount is one for the court sitting in equity to consider and not the jury"). Accordingly, the Court concludes that evidence relating to front pay should be excluded from evidence at trial. In the event Plaintiff should prevail on any claims permitting Plaintiff to seek an award of front pay, the Court will consider further the issue of front pay after trial.

      c.  Reputational Harm

          i.  Summary Judgment

31.    Defendants argue on summary judgment that Plaintiff has failed to provide any evidence to support his contention that he has suffered harm to his reputation and thus that Plaintiff's damages claim on this basis should be dismissed as a matter of law. The Court agrees. Rule 56 makes clear that upon the moving party's showing that a genuine issue of material fact does not exist, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." N.C. R. Civ. P. 56(e). In the face of Defendants' showing in its summary judgment submissions that Plaintiff had failed to show reputational harm, Plaintiff chose not to address Defendants' contention in his opposition brief, much less offer any evidence of any kind to show that he, in fact, has suffered harm to his reputation. *See* 2 G. Gray Wilson, *North Carolina Civil Procedure* § 56-8, at 56-24 (2007) (The Court "has no duty…to consider evidence that is not brought to its attention by a party."). As a result, on this basis alone, Defendants' motion for summary judgment should be

granted. *See, e.g.*, *Cyprus Group, LLC,* 2008 N.C. App. LEXIS 845, at *9; *Carter,* 2014 NCBC LEXIS 12, at *13.

32. Although the Court does not consider the evidence offered on Defendants' Damages Motion *in Limine* in deciding Defendants' Motion for Summary Judgment, consideration of that evidence would not change this result. Plaintiff offered three affidavits in response to Defendants' Damages Motion *in Limine* that arguably provide evidence of alleged reputational harm to Plaintiff in the racing community. These affidavits, however, even if taken as true and deemed admissible at trial, do not constitute evidence showing that Plaintiff suffered actual harm to his reputation as a result of improper conduct by Defendants.

33. For example, Plaintiff offers testimony from Richard Coleman, a former tire carrier at MWR, who testified broadly that:

> "I also think the fact that MWR is not allowing Brandon to work after terminating him is crazy. It makes no sense to fire someone and stop them from working for anyone else, especially in these circumstances. No one in the industry is going to want to deal with Brandon knowing that this whole situation is hanging over him."

(Pl.'s Mem. Opp'n Damages Mot. Lim. Ex. C.) Coleman's testimony does not provide evidence that Plaintiff has suffered reputational harm. Neither does it show that the industry's purported refusal "to deal with [him]" is because of Defendants' alleged misconduct. To the contrary, in context, Coleman's reference to "this whole situation [that] is hanging over him" is focused on Plaintiff's non-competition agreement with MWR and the existence of this lawsuit, not on Defendants' purported misconduct.

34. Similarly, Shaun Peet, a former pit coach at MWR, also offered testimony stating that "[t]he whole situation has been pretty poisonous for Brandon. It is my belief that no one will be able to work with Brandon." (Pl.'s Mem. Opp'n Damages Mot. Lim. Ex. D.) Like Coleman, Peet does not contend that Plaintiff has suffered reputational harm or that Defendants have caused Plaintiff actual injury.

35. Finally, Gregory D. Miller, MWR's former pit coach, testified:

MWR's decision to terminate Brandon just prior to his scheduled surgery spread quickly throughout the racing world. Many of those in that world—i.e., others in NASCAR—heard from MWR that MWR terminated Brandon because of poor performance. Worse yet, others spoke about theft as a basis for the termination. Reverberations of this are still out there today. . . . The racing world took note. MWR's decision to fire Brandon severely hindered his reputation in the industry. . . . Brandon's damaged reputation has held him back since MWR terminated him. . . . I can't envision a future in which Brandon's reputation is restored to what it was prior to MWR's decision to terminate his employment.

(Pl.'s Mem. Opp'n Damages Mot. Lim. Ex. B.)

36. Although asserting that Plaintiff has suffered reputational harm, Miller's testimony nevertheless fails to offer evidence that Defendants' alleged misconduct caused Plaintiff to suffer actual damages. His assertions that "reverberations of [others speaking about theft as a basis for Plaintiff's termination] are still out there today," that "the racing world took note [of Plaintiff's late season firing]," or that "Brandon's damaged reputation has held him back" do not constitute evidence that any employer in the racing industry declined to consider for employment or hire Plaintiff because MWR fired him for allegedly stealing MWR's property. *See, e.g.*, *Currituck Assocs. Residential P'ship v. Coastland Corp.*, 2010 N.C. App. LEXIS 1263,

at *16 (N.C. App. 2010) (rejecting claim based on reputational harm because plaintiff failed to "allege[] an actual injury proximately caused by [defendant]").

37. Despite his burden to do so in response to Defendants' Motion for Summary Judgment, Plaintiff has failed to offer evidence from any source, including a prospective employer, upon which a reasonable jury could conclude that any employer in the racing community has chosen not to hire Plaintiff because of the employer's perception of Plaintiff arising from his termination from employment by MWR. *See generally, e.g., Zamora v. City of Houston*, No. H-07-45102016, U.S. Dist. LEXIS 161694, at *3 (S.D. Tex. Nov. 22, 2016) ("An award of damages for reputational harm requires specific evidence that the reputational harm resulted from the action for which the defendant is liable.").

38. Accordingly, for the reasons set forth above, the Court concludes that Plaintiff's damages claim based on reputational harm should be dismissed as a matter of law.[1]

ii. Damages Motion *in Limine*.

39. Based on the Court's resolution of the Plaintiff's right to recover damages for alleged harm to his reputation on Defendants' Motion for Summary Judgment, the Court concludes that Defendants' Damages Motion *in Limine* should be granted

---

[1] The parties vigorously dispute whether any of the claims Plaintiff has asserted permit a prevailing plaintiff to recover damages for alleged reputational harm. In light of the Court's resolution of Defendants' Motion for Summary Judgment on this issue, the Court finds it unnecessary to address the parties' competing contentions.

and that evidence of Plaintiff's alleged reputational harm should be excluded from evidence at trial.

        d.  <u>Lost Earning Capacity[2]</u>

40.   Lost earnings capacity, also known as lost future earnings or diminished earnings capacity, "compensates [a plaintiff] for a lifetime of diminished earnings resulting from the reputational harms [the plaintiff] suffer[s] as a result of [the employer's] discrimination." *Williams v. Pharmacia, Inc.*, 137 F.3d 944, 953 (7th Cir. 1998). It is a recognized compensatory remedy for an employee's claims based on alleged wrongful termination. *See, e.g., Williams,* 137 F.3d at 952 (recognizing remedy for Americans with Disabilities Act claim); *Blakeley v. Town of Taylortown*, 233 N.C. App. 441, 448, 756 S.E.2d 878, 883 (2014) (recognizing remedy for North Carolina wrongful discharge claim).

41.   Plaintiff premises his claim for diminished earnings capacity on his contention that MWR's alleged wrongful termination has so colored the racing industry's perception of him that he will suffer diminished earnings for at least seventeen years. (Hopkins Dep. 743:19–22; 752–53.) Such a damages theory, however, can only be sustained where a defendant causes a plaintiff reputational harm leading to the plaintiff's diminished earnings. *See, e.g., Sanders v. Madison Square Garden, L.P.*, No. 06-CV-589 (GEL), 2007 U.S. Dist. LEXIS 57319, at *39 (S.D.N.Y. Aug. 6, 2007) ("[W]here an employee can expect to encounter increased

---

[2] Defendants did not challenge this theory of damages in their Motion for Summary Judgment; thus, the Court's analysis is only in connection with Defendants' Damages Motion *in Limine*. The parties also dispute whether Plaintiff fairly and properly disclosed this theory of damages. The Court need not resolve this dispute in light of the Court's ruling.

difficulty in finding comparable employment due to injury to her professional standing caused by an employer's unlawful conduct, the employee may recover for the added difficulty in the form of compensatory damages."); *Mahony v. KeySpan Corp.*, No. 04-CV-554 (SJ), 2007 U.S. Dist. LEXIS 22042, at *21 (E.D.N.Y. Mar. 12, 2007) ("When reputational injury caused by an employer's unlawful discrimination diminishes a plaintiff's future earnings capacity, [he] cannot be made whole without compensation for the future earnings [he] would have received absent the employer's discrimination." (alterations in original)); *Hite v. Vermeer Mfg. Co.*, 361 F. Supp. 2d 935, 947 (S.D. Iowa 2005) (plaintiff could not obtain damages for lost future earnings because she had "offered nothing to support the assertion that her unlawful discharge taint[ed] her employment record"); *Mattenson v. Baxter Healthcare Corp.*, No. 02-CV-3283, 2004 U.S. Dist. LEXIS 24291, at *13 (N.D. Ill. Nov. 30, 2004) ("[L]ost future earnings is a common-law tort remedy available to plaintiffs in a Title VII case…[that] compensates a plaintiff for a lifetime of diminished earnings resulting from the reputational harms the plaintiff suffers as a result of the employer's discrimination."); *Williams v. Pharmacia, Inc.*, 956 F. Supp. 1457, 1466 ("'[L]ost earning capacity'… is closest to the notion of an injury to professional standing, and akin to injuries to reputation or character.").[3]

---

[3] It is true that non-reputational harm might give rise to a claim for lost earnings capacity – for example, a loss of seniority where pay is based on seniority, *see Bennett v. Smith*, No. 96 C 2422, 2001 U.S. Dist. LEXIS 8714 (N.D. Ill. June 26, 2001), or a physical injury precluding higher-paying work—but here no such "other" harm has been pleaded, argued, or supported with evidence in Plaintiff's pursuit of this damages theory.

42. As discussed above, however, Plaintiff failed to offer any evidence of reputational harm on Defendants' Motion for Summary Judgment or any evidence that Plaintiff's purported reputational harm was caused by Defendant's alleged misconduct in opposition to Defendants' Damages Motion *in Limine.* The Court has thus concluded that summary judgment dismissing Plaintiff's damages claim for reputational harm must necessarily follow and that Plaintiff should therefore be precluded from offering evidence of reputational harm at trial.

43. As advanced here, the existence of reputational harm caused by Defendants' alleged misconduct is a necessary component of Plaintiff's damages claim for lost earnings capacity. The Court thus concludes that its summary judgment ruling foreclosing Plaintiff's recovery for reputational harm is fatal to Plaintiff's claim for alleged diminished earnings capacity and necessarily precludes Plaintiff from offering evidence and argument in support of that theory at trial. *See generally, United States v. City of New York*, 897 F. Supp. 2d 30, 48–49 (E.D.N.Y. 2012) (stating that the "case law makes clear" that a plaintiff must show that the discrimination he suffered caused a "reputational harm—injury to his professional standing, character, or reputation—which in turn resulted in a narrowing of economic opportunities").

44. Accordingly, the Court concludes that Defendants' Damages Motion *in Limine* should be granted and that evidence of Plaintiff's alleged lost earnings capacity damages should be excluded from evidence at trial.[4]

---

[4] Although not cited by Plaintiff, consideration of Dr. Albrecht's proposed testimony on this theory does not affect the Court's analysis. In rendering his opinions, Dr. Albrecht makes clear, both in his expert report and again at his deposition, that he has assumed, without performing any independent investigation, that Plaintiff has in fact suffered diminished

e. Emotional Distress Damages

i. Summary Judgment

45. If properly supported, the law permits recovery for emotional distress damages on a plaintiff's claims for wrongful discharge, *see Blakeley*, 233 N.C. App. at 448, 756 S.E.2d at 883, and under the ADA; *Landgraf v. USI Film Prod.*, 511 U.S. 244, 253–54 (1994) (recognizing that the Civil Rights Act of 1991, which includes "emotional pain," extends to the ADA). Emotional distress damages are "sometimes referred to as pain and suffering damages." *Blakeley*, 233 N.C. App. at 448, 756 S.E.2d at 884. Under North Carolina law, "[p]ain and suffering damages are intended to redress a wide array of injuries ranging from physical pain to anxiety, depression, and the resulting adverse impact upon the injured party's lifestyle." *Iadanza v. Harper,* 169 N.C. App. 776, 780, 611 S.E.2d 217, 221 (2005). Similarly, to assess emotional distress damages under federal law, the Fourth Circuit examines "factors such as the need for medical, psychological, or psychiatric treatment, the presence of physical symptoms, loss of income, and impact on the plaintiff's conduct and lifestyle." *Doe v. Chao*, 306 F.3d 170, 180 (4th Cir. 2002), *aff'd*, 540 U.S. 614 (2004).

46. Defendants argued in their Motion for Summary Judgment that Plaintiff failed to present any evidence of emotional distress damages and that the amount requested is too speculative. (Defs.' Br. Supp. Mot. Summ. J. 40–41.) The Court disagrees. In contrast to his failure to bring forward any evidence of reputational harm, Plaintiff has offered specific evidence to support his claim for emotional

---

earnings capacity as a result of the harm to Plaintiff's reputation arising from Defendants' alleged wrongful termination. (Albrecht Report 8/8/2017, at 1; Albrecht Dep. 12–13, 182–83.)

distress damages. (Pl.'s Mem. Opp'n Mot. Summ. J. 40.) In particular, Plaintiff points to his own deposition testimony averring that he went through an "emotional roller coaster" that impacted all facets of his life and for which he sought professional treatment, and he has proffered evidence disclosing his medical diagnosis of depression. (Hopkins Dep. 759:16–760:21). As such, the Court concludes that Plaintiff has met his burden to survive Defendants' motion. *See generally, e.g., Webner v. Titan Distrib.*, 267 F.3d 828, 836 (8th Cir. 2001) ("To prove emotional distress in relation to his ADA claim . . . a plaintiff's own testimony, along with the circumstances of a particular case, can suffice to sustain the plaintiff's burden in this regard.") (internal citations omitted)); *see also Blakeley*, 233 N.C. App. at 448–49, 756 S.E.2d at 884 (finding that, for a wrongful discharge claim, "plaintiff was not required to show either 'severe emotional distress' or 'extreme and outrageous conduct' by defendant" to recover emotional distress damages).

## ii. Damages Motion *in Limine*

47. Defendants contend in their Damages Motion *in Limine* that evidence of Plaintiff's emotional distress damages, and Plaintiffs' request for $300,000 in such damages, should be excluded because Plaintiff's evidence is unduly speculative and his monetary request is based on nothing more than conjecture. (Defs.' Mem. Supp. Damages Mot. Lim. 9–11.)

48. Under North Carolina law, "one to whom another has tortiously caused harm is entitled to compensatory damages if, but only if, he establishes by proof the extent of the harm and the amount of money representing adequate compensation

with as much certainty as the nature of the tort and the circumstances permit." *Largent v. Acuff*, 69 N.C. App. 439, 444, 317 S.E.2d 111, 114 (1984). "Where the plaintiff can prove the fact of damage, but not the extent of it, the reasonable certainty rule as it is now applied in most courts does not require proof of damages with mathematical precision." *Id.* "The fact that the full extent of the damages must be a matter of some speculation is no ground for refusing all damages." *Brown v. Moore*, 286 N.C. 664, 673, 213 S.E.2d 342, 349 (1975). Emotional distress damages, in particular, are "fraught with vagueness and speculation." *Price v. City of Charlotte,* 93 F.3d 1241, 1250 (4th Cir. 1996).

49. In light of these principles, the Court is not prepared to conclude on the current record that Plaintiff's request for $300,000 in emotional distress damages is speculative and arbitrary. The Court will therefore defer further consideration of Defendants' Damages Motion *in Limine* on this issue until the presentation of evidence at trial.

### f. Consequential Damages

#### i. Summary Judgment

50. Defendants contend on summary judgment that Plaintiff's purported consequential damages "are not recoverable under any legal theory" without further explanation. (Defs.' Br. Supp. Summ. J. 41.) Plaintiff chose not to respond to Defendants' contention in his opposition brief. The Court concludes that summary judgment is not proper on Defendants' stated ground.

51.    Plaintiff has asserted a claim for wrongful discharge in violation of public policy. Our courts consider this claim to sound in tort. *See, e.g.*, *Blakeley*, 233 N.C. App. at 447, 756 S.E.2d at 883 (citing *McDonnell v. Guilford Cty. Tradewind Airlines,* 194 N.C. App. 674, 678, 670 S.E.2d 302, 306 (2009)). Under longstanding North Carolina law, a tortfeasor "is responsible for all damages directly caused by his misconduct, and for all indirect or consequential damages which are the natural and probable effect of the wrong, under the facts as they exist at the time the same is committed and which can be ascertained with a reasonable degree of certainty." *Bowen v. Harris*, 146 N.C. 385, 390, 59 S.E. 1044, 1047 (1907). Our courts have concluded that such damages include at least lost wages, future lost earnings, and emotional distress. *Blakeley*, 233 N.C. App. at 447, 756 S.E.2d at 883. Although it does not appear that our appellate courts have specifically addressed the availability of consequential damages for the tort of wrongful discharge, the Court finds no reason why (and Defendants have provided no authority supporting its contention that) such damages should not be available to a wrongful discharge plaintiff upon proper proof.

52.    Accordingly, the Court concludes that Defendants' Motion for Summary Judgment as to consequential damages should be denied.

ii.    Damages Motion *in Limine*

53.    In their Damages Motion *in Limine*, Defendants seek to exclude evidence in support of Plaintiff's claim for consequential damages, and, in particular, Plaintiff's contention that he is entitled to recover his alleged losses in selling certain items of personal property, including his house, so he could "survive throughout this period of

time." (Defs.' Br. Supp. Mot. Summ. J. 41; Hopkins Dep. 755–58.) In particular, Defendants contend that Plaintiff has failed to properly plead these damages as special damages, *see Piedmont Plastics, Inc. v. Mize Co.*, 58 N.C. App. 135, 140, 293 S.E.2d 219, 223 (1982), and further that Plaintiff has failed to offer evidence showing that Plaintiff's termination was the proximate cause of the sale of his property.

54. Our courts have recognized that "incidental and consequential damages are 'special damages, those which do not necessarily result from the wrong.'" *Id.* at 140, 293 S.E.2d at 223 (quoting *Rodd v. Drug Co.*, 30 N.C. App. 564, 568, 228 S.E.2d 35, 38 (1976)). According to the Supreme Court, "general damages are such as might accrue to any person similarly injured, while special damages are such as did in fact accrue to the particular individual by reason of the particular circumstances of the case." *Penner v. Elliott*, 225 N.C. 33, 35, 33 S.E.2d 124, 126 (1945). Stated differently, "[s]pecial damages are damages that are the natural but not necessary result of the alleged wrongful act of the defendant." *Smart Online, Inc. v. Opensite Techs., Inc.*, 2003 NCBC LEXIS 7, at *25 (N.C. Super. Ct. June 17, 2003) (citing *Oberholtzer v. Huffman*, 234 N.C. 399, 67 S.E.2d 263 (1951)).

55. Because special damages are "of an unusual and extraordinary nature, and not the common consequence of the wrong complained of or implied by law," *Binder v. General Motors Acceptance Corp.*, 222 N.C. 512, 514–515, 23 S.E.2d 894, 895–896 (1943), our courts have held that special damages "must be pleaded, and the facts giving rise to [them] must be alleged so as to fairly inform the defendant of the scope of the plaintiff's demand." *Piedmont Plastics, Inc.*, 58 N.C. App at 140, 293 S.E.2d at

223 (quoting *Rodd*, 30 N.C. App. at 568, 228 S.E.2d at 38); *see also Binder*, 222 N.C. at 514, 23 S.E.2d at 895 (noting that purpose of special pleading rule is "to prevent surprise to the defendant").

56. Plaintiff does not contend that he has specifically pleaded his intention to seek consequential damages or specific facts permitting their recovery. Rather, he argues that the special pleading rule only applies to claims alleging breach of contract, noting that *Piedmont Plastics* involved a contract claim. (Pl.'s Mem. Opp'n Damages Mot. Lim. 13). Contrary to Plaintiff's contention, however, our Supreme Court has made clear that the special pleading rule applies to tort claims, stating the rule as follows:

> The general rule with reference to pleading items of damages in personal-injury cases is this: Those injuries which are the natural and probable consequences of the hurt alleged in the complaint, and which are reasonably included therein, need not be set out in detail. The law will infer them from the facts set forth. Effects, however, which are not logical and necessary, and which do not ordinarily follow such injuries constitute special damages, which must be specifically pleaded.

*Thacker v. Ward*, 263 N.C. 594, 599, 140 S.E.2d 23, 28 (1965); *see also Oberholtzer*, 234 N.C. at 399, 67 S.E.2d at 263 (holding in tort claim that "special damages…must be pleaded with sufficient particularity to put the defendant on notice"); *Zarn, Inc. v. S. Ry. Co.*, 50 N.C. App. 372, 375, 274 S.E.2d 251, 254 (1981) (recognizing that "in a tort claim, special damages are recoverable if specifically pleaded").

57. Here, Plaintiff has not pleaded consequential damages in any of his three complaints or any specific facts he contends support such relief. At his deposition,

Plaintiff testified that he sold certain items of personal property (two watches, a Harley Davidson motorcycle, a dirt bike, furniture, and some tools) and his house to pay for his living expenses during the pendency of this action. The Court cannot conclude, and Plaintiff has not directed the Court to any case law suggesting, that Plaintiff's voluntary decision to sell his personal property to raise cash reflects the "natural and probable consequences of the hurt alleged in the complaint," *Thacker*, 263 N.C. at 599, 140 S.E.2d at 28, or the "common consequence of the wrong complained of or implied by law," *Binder*, 222 N.C. at 514, 23 S.E.2d 895.

58.   As a result, the Court concludes that the consequential damages Plaintiff has forecast he intends to seek at trial are special damages of the sort that Plaintiff was required to specifically plead in his complaint to put Defendants on notice of this damages claim. His failure to plead such special damages is therefore fatal to his claim and precludes him from advancing evidence and argument in support of his alleged consequential damages at trial.

59.   Separately, Plaintiff has also failed to point the Court to any evidence showing that Defendants' conduct was the proximate cause of Plaintiff's voluntary choice to sell certain assets or that Plaintiff's purported damages constituted an actual injury to Plaintiff. *See, e.g., Piedmont Plastics, Inc.*, 58 N.C. App. at 140, 293 S.E.2d at 223 ("An instruction on special damages is appropriate, however, only when such damages are particularly alleged in the complaint *and the allegation is sustained by the evidence.*" (citing *Binder*, 222 N.C. at 514–15, 23 S.E. 2d at 895)).

As such, the Court concludes, for this additional reason, that evidence and argument concerning the consequential damages sought by Plaintiff should be excluded at trial.

B. <u>Plaintiff's Expert Witness and Report</u>

60. Defendants seek to exclude the testimony of Plaintiff's damages expert, Dr. Albrecht. Dr. Albrecht's expert report forecasts testimony concerning Plaintiff's right to recover back pay and front pay, including, as discussed above, his diminished earnings capacity. Defendants argue that Dr. Albrecht's testimony fails to satisfy the requirements of North Carolina Rule of Evidence 702, the rule governing the admissibility of expert testimony in the trial courts of North Carolina.

61. As recently made clear by the Supreme Court of North Carolina, Rule 702 is now "virtually identical to its federal counterpart and follows the *Daubert* standard for admitting expert testimony." *Safety Test & Equip. Co. v. Am. Safety Util. Corp.*, 2016 NCBC LEXIS 100, at *5 (N.C. Super. Ct. Dec. 16, 2016) (citing *State v. McGrady*, 368 N.C. 880, 884, 787 S.E.2d 1, 5 (2016) and referencing *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 582 (1993)). The Rule has three main requirements: (1) expert testimony must be based on specialized knowledge that will assist the trier of fact, (2) the expert must be qualified by "knowledge, skill, experience, training, or education," and (3) the testimony must be reliable. *McGrady*, 368 N.C. at 889–90, 787 S.E.2d at 8–9; N.C. R. Evid. 702(a). An expert's testimony is reliable if (1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods reliably to the facts of the case. N.C. R. Evid. 702(a)(1)–(3).

62. The focus of the trial court's inquiry "must be solely . . . [the] principles and methodology" used by the expert, "not . . . the conclusions that they generate." *Daubert*, 509 U.S. 579 at 582. "The trial court is tasked with making the preliminary decision of the testimony's admissibility and has discretion in determining how to address the three prongs of the reliability test." *Insight Health Corp. v. Marquis Diagnostic Imaging of N.C., LLC*, 2017 NCBC LEXIS 14, at *40 (citing *McGrady*, 368 N.C. at 892–93, 787 S.E.2d at 9–10). In applying the *Daubert* standard, North Carolina courts may seek guidance from federal case law. *McGrady*, 368 N.C. at 888, 787 S.E.2d at 8.

a. Opinions Concerning Plaintiff's Back Pay

63. Dr. Albrecht stated in his report that he "calculated the back-pay loss, the loss from Mr. Hopkins's age of 27.64, his age when he discontinued employment at MWR, to his age of 29." (Albrecht Report 12/16/15, at 3.) Dr. Albrecht further stated:

> "[t]he back-pay loss is calculated using earnings of $162,518 annually less the amount Mr. Hopkins earned changing tires for Hillman Racing in that time period, $10,400. The diminished back-pay earnings over this time are calculated to be $210,624."

(Albrecht Report 12/16/15, at 3; *see also* Table 8.) Dr. Albrecht modified his report on May 20, 2016 to state that "the loss from age 27.64 to age 30 is $360,142," (Albrecht Report 5/20/16, at 1, Table 8), and again on May 25, 2016 to indicate that "the loss from age 27.64 to age 30 is $352,741," (Albrecht Report 5/25/16, at 1, Table 8).

64. Defendants challenge Dr. Albrecht's back pay opinion on various grounds, including that his calculations involve simple math and thus do not require the

"specialized knowledge" for expert testimony required under *Daubert*. (Defs.' Mem. Supp. Expert Mot. Lim. 6–7, ECF No. 126.) The Court disagrees.

65. Although Dr. Albrecht acknowledges that his back pay calculations are "simply math applied to expected future earnings versus what [Plaintiff] is, in fact, earning post termination," (Albrecht Dep. 128, 172), his calculations involve several inter-related steps in which one calculation leads to the next to enable him to reach his opinion concerning back pay damages.[5] Although certainly not complex mathematics, the Court nevertheless concludes that Dr. Albrecht's calculations and their sequence involve specialized knowledge, are likely not within the common knowledge of a typical juror, and would be helpful to the jury. *McGrady*, 368 N.C. at 889, 787 S.E.2d at 8 ("[E]xpert testimony must provide insight beyond the conclusions that jurors can readily draw from their ordinary experience.") (citing N.C. R. Evid. 702(a)). Accordingly, Defendants' challenge to Dr. Albrecht's back pay opinion and testimony on this basis fails.

66. Defendants also seek to exclude Dr. Albrecht from offering his opinions and testimony on back pay damages on the ground that "he has failed to reliably apply his methodology to the key facts in this case that show his calculations are wrong."

---

[5] Based on his expert report, it appears Dr. Albrecht reached his opinion by (i) determining Mr. Hopkins's exact age (by years and days) at the time he was terminated, (ii) calculating Mr. Hopkins's exact age at termination as a fraction, (iii) subtracting Mr. Hopkins's exact age at termination from his age at the time of his last expert report, (iv) multiplying the period of time between Mr. Hopkins's ages at termination and the issuance of the last report times Mr. Hopkins's stated annual earnings, and subtracting Mr. Hopkins's stated earnings during that same period. Dr. Albrecht acknowledged that he did not undertake any independent investigation and simply relied upon information supplied to him by Plaintiff. (Albrecht Report 8/8/2017, at 1; Albrecht Dep. 12–13, 182–83.)

(Defs.' Mem. Supp. Expert Mot. Lim. 10.) Except as noted below, the Court disagrees and concludes that Defendants' criticisms on this ground affect the weight and credibility of Dr. Albrecht's opinions, not their admissibility. *See, e.g., Bresler v. Wilmington Trust Co.*, 855 F.3d 178, 195 (4th Cir. 2017) ("'[Q]uestions regarding the factual underpinnings of the [expert witness's] opinion affect the weight and credibility' of the witness'[s] assessment, 'not its admissibility.'") (quoting *Structural Polymer Grp. v. Zoltek Corp.*, 543 F.3d 987, 997 (8th Cir. 2008)). However, in light of the Court's determination that Plaintiff may not recover for his alleged back pay damages accruing on or after December 30, 2015, Dr. Albrecht may not offer opinions and testimony concerning back pay damages beyond that date.

67. Accordingly, the Court concludes that Defendants' Expert Motion *in Limine* as to Dr. Albrecht's opinions concerning back pay damages should be granted in part such that Dr. Albrecht will be permitted to offer opinions and testimony at trial concerning Plaintiff's alleged back pay damages, but only for the period between Plaintiff's termination on August 5, 2014 and the termination of all MWR's pit crew members on December 30, 2015 after MWR ceased its racing operations. Given that Dr. Albrecht's calculations currently reflect a termination date of December 15, 2015, the Court will require Plaintiff to provide to Defendants no later than November 1, 2017, the revised calculations Dr. Albrecht intends to offer at trial concerning Plaintiff's alleged back pay damages through December 30, 2015.

b. Opinions Concerning Front Pay (Excluding Diminished Earnings Capacity)

68. Consistent with the Court's determination that Plaintiff's claim for front pay damages does not present a jury issue, but rather an equitable issue for determination by the Court after trial, the Court will grant Defendants' Expert Motion *in Limine* as to front pay such that Dr. Albrecht shall not be permitted to offer opinions and testimony at trial concerning Plaintiff's alleged front pay damages.

69. The Court instructs the parties to meet and confer and be prepared to discuss with the Court at the pretrial conference whether the Court should hear Dr. Albrecht's testimony concerning front pay out of the presence of the jury during the trial or reserve all such testimony for any post-trial proceedings in the event Plaintiff prevails on any claim permitting an award of front pay.

c. Opinions Concerning Diminished Earnings Capacity

70. In light of the Court's determination that evidence of diminished earnings capacity should be excluded at trial, the Court will not permit Dr. Albrecht to offer testimony and opinions concerning this theory of damages at trial.

71. **WHEREFORE**, for the foregoing reasons, the Court hereby **GRANTS in part** and **DENIES in part** Defendants' Motion for Summary Judgment as to damages, and, in the exercise of its discretion, and without prejudice to the Court's right to modify its motion *in limine* rulings during the course of the trial, **GRANTS in part** and **DENIES in part** Defendants' Motions *in Limine* as follows:

a. Defendants' Motion for Summary Judgment as to Damages.

i. Defendants' Motion for Summary Judgment as to Plaintiff's alleged damages is **GRANTED**: (1) limiting Plaintiff's claim for back pay damages to, at most, the period between Plaintiff's termination on August 5, 2014 and MWR's termination of its pit crew members on December 30, 2015; (2) deferring a ruling on Plaintiff's claim for front pay damages, which will be addressed by the Court after trial should Plaintiff prevail on a claim permitting an award of front pay; and (3) dismissing Plaintiff's damages claim for reputational harm.

ii. Defendants' Motion for Summary Judgment as to Plaintiff's alleged damages is **DENIED** as to Plaintiff's claims for emotional distress damages and consequential damages.

b. Defendants' Damages Motions *in Limine.*

i. Defendants' Damages Motion *in Limine* is **GRANTED**: (1) limiting Plaintiff's evidence of back pay damages to the period between Plaintiff's termination on August 5, 2014 and MWR's termination of its pit crew members on December 30, 2015; and (2) excluding Plaintiff's evidence of (a) front pay damages, (b) alleged harm to Plaintiff's reputation, (c) alleged lost earnings capacity, and (d) alleged consequential damages

resulting from the sale of Plaintiff's personal and real property.

    ii. Defendants' Damages Motion *in Limine* is **DEFERRED** as to Plaintiff's evidence of emotional distress damages until the presentation of evidence at trial.

c. <u>Defendants' Expert Motion *in Limine.*</u>

    i. Defendants' Expert Motion *in Limine* is **GRANTED** such that (1) Dr. Albrecht will be permitted to offer testimony and opinions at trial concerning Plaintiff's alleged back pay damages, but only for the period between Plaintiff's termination on August 5, 2014 and the termination of MWR's pit crew members on December 30, 2015 after MWR ceased all racing operations; (2) Dr. Albrecht shall not be permitted to offer testimony and opinions at trial concerning Plaintiff's alleged front pay damages; and (3) Dr. Albrecht shall not be permitted to offer testimony and opinions at trial concerning Plaintiff's alleged lost earnings capacity damages.

    ii. No later than November 1, 2017, Plaintiff shall provide to Defendants the revised calculations Dr. Albrecht intends to offer at trial concerning Plaintiff's alleged back pay damages through December 30, 2015.

iii. The parties are ordered to meet and confer and be prepared to discuss with the Court at the pretrial conference whether the Court should hear Dr. Albrecht's testimony concerning front pay out of the presence of the jury during the trial or reserve all such testimony for any post-trial proceedings in the event Plaintiff prevails on any claim permitting an award of front pay.

**SO ORDERED**, this the 3rd day of October, 2017.


/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Special Superior Court Judge
 for Complex Business Cases